Rockingham County Probate Court
No. 82-549

## *In re* ROBYN W.

December 29, 1983

*The Legal Clinics*, of Portsmouth (*John M. Lewis* and *David M. Cline* on the brief, and *Mr. Cline* orally), for the plaintiff.

*Bernard J. Robertson*, of Exeter, by brief and orally, for the defendant.

KING, C.J.   In June 1979, the New Hampshire Legislature amended RSA 170-C:11, V (Supp. 1983) to provide that a court in a parental rights termination proceeding shall issue a decision within sixty days after the final hearing. The issue in this case is whether RSA 170-C:11, V (Supp. 1983) requires that a decision of a probate court, terminating the parental rights of a parent, released 206 days after the statutory deadline, be vacated. We hold that the language and legislative intent of RSA 170-C:11, V (Supp. 1983) mandate that a court issue a decision within sixty days after the final hearing, unless its failure to comply with the prescribed time limit is *de minimis*. For the following reasons, we affirm.

On September 28, 1981, the plaintiff, Dorothy S., filed a petition in Rockingham County Probate Court to terminate the parental rights of the defendant, Mark W., over Robyn W., their three-year-old child. A hearing was held on February 17, 1982 (*Cassavechia*, Acting Judge). On April 22, 1982, four days after the end of the

sixty-day time limit for issuance of a decision, an order had not been issued by the probate court, and the defendant moved to dismiss the case for lack of jurisdiction. The probate court never acted upon this motion. The probate court had also failed to render a decision by October 20, 1982, when the plaintiff petitioned the probate court for judgment. The petition for judgment and the defendant's subsequent objection to the petition were never addressed by the court. Finally, on November 10, 1982, 266 days after the hearing, the probate court issued a decree terminating the parental rights of the defendant.

The defendant appeals the decision of the probate court, asserting that the probate court did not have jurisdiction to issue a decision terminating parental rights, after sixty days had elapsed from the date of the hearing.

RSA 170-C:11, V (Supp. 1983) provides that a court in a parental rights termination proceeding *"shall* issue a decision which *shall* include a disposition not later than 60 days after the date of the final hearing." (Emphasis added.)

██ Our inquiry requires us to construe the meaning of RSA 170-C:11, V (Supp. 1983) to determine whether its language is directory or mandatory. We must determine the intent of the legislature in enacting the statute. *Corson v. Brown Products, Inc.*, 119 N.H. 20, 23, 397 A.2d 640, 642 (1979). We begin our inquiry with an examination of the language of the statute itself. *State Employees' Ass'n of N.H. v. Bd. of Trustees*, 120 N.H. 272, 273, 415 A.2d 665, 666 (1980). This court will ascribe to the crucial words of the statute their plain and ordinary meaning. *See* RSA 21:2.

██ The general rule of statutory construction is that the word "shall" is a command which requires mandatory enforcement. *Town of Nottingham v. Harvey*, 120 N.H 889, 895, 424 A.2d 1125, 1129 (1980); *In re Russell C.*, 120 N.H. 260, 264, 414 A.2d 934, 936 (1980). "This rule is particularly forceful when the command is addressed to a public official." *Silva v. Botsch*, 120 N.H. 600, 602, 420 A.2d 301, 302 (1980).

██ The plain meaning of the word "shall" in RSA 170-C:11, V (Supp. 1983) clearly indicates that the legislature intended to make mandatory the sixty-day time limit for the issuance of a parental rights termination decision.

The plaintiff, however, argues that a literal interpretation of the word "shall" would produce an illogical result by nullifying the basic purpose of RSA chapter 170-C, which is to protect the best interests of children. *See In re Russell C.*, 120 N.H. at 264, 414 A.2d

at 936 (a statute should not be interpreted to lead to an absurd, unjust, or illogical result). The plaintiff contends that a strict interpretation of the sixty-day requirement would only result in continued uncertainty in this case over who is the father of Robyn W. Thus, the plaintiff concludes that the legislature intended that the statute be directory. We disagree.

While we are sympathetic to the laudable concerns of the plaintiff, we believe that the interpretation of the word "shall" in its mandatory sense is consistent with the goals of the legislature. The legislative history of chapter 332, section 3, of the New Hampshire Laws of 1979 (codified at RSA 170-C:11, V (Supp. 1983)) (formerly House Bill 852) indicates that the legislature sought to prevent lengthy delays in probate court decision-making in parental rights termination proceedings:

> "[H.B. 852] . . . requires more specifically that the probate court issue a decision within 60 days after the final hearing. In these cases there are proposed parents who want to adopt these children and sometimes the probate court has held up these evaluations for literally months and sometimes years. It is the feeling of the committee . . . unanimously that this bill should pass so that the probate court will speed up its passage and in fact have an answer within 60 days."

Senator Roy, N.H.S. JOUR. 1269 (1979).

In view of the intent of the legislature in passing H.B. 852, we do not find it absurd, unjust, or illogical to construe RSA 170-C: 11, V (Supp. 1983) to require that a court render its decision within sixty days of the final hearing.

Here, the order was issued on a date well beyond the statutorily prescribed limit. Furthermore, the failure of the probate court to comply with the statute was not the result of any delay caused or requested by either party to the proceeding. Indeed, both parties sought, unsuccessfully, to obtain a decision from the court after the deadline had expired, through a motion to dismiss and a petition for judgment.

Having determined that the sixty-day time limitation creates a mandatory obligation on the courts, we must next determine the appropriate mode of enforcement of the mandate. *In re Russell C.*, 120 N.H 260, 414 A.2d 934, involved similar language which we found mandatory in requiring adjudicatory hearings on charges of juvenile delinquency or need for supervision. We found that the statute's purpose is to guarantee due process in protecting a juvenile's

right to speedy disposition in the interest of his personal liberty. We found that construing the mandate as limiting the court's jurisdiction was consistent with legislative goals, and held that the statute limited the court's jurisdiction to the period specified, in the absence of waiver. We held that a petition must be dismissed if the adjudicatory hearing has not been held within the time specified.

In determining how to give effect to the mandate in the present statute, we must again look to statutory goals. There are two objectives: first, to promote the welfare of a child who has suffered from any variety of parental wrongdoing or incapacity, described in RSA 170-C:5 (Supp. 1983); and second, to provide a speedy disposition for the sake of the child's welfare and the interest of the parent whose parental rights may be terminated, *cf.* DOUGLAS, 3 N.H. PRACTICE, FAMILY LAW § 255 (1982) (delay in custody proceedings). RSA 170-C:11, V (Supp. 1983).

While the interest of the parent would be vindicated by treating the mandatory time limitation as jurisdictional and by requiring dismissal of the petition if there has been no disposition within 60 days after the hearing, the statute's other objectives would be thwarted by such a course. Dismissal would penalize the interest of the child. This would be an illogical result.

We find that the various interests may be promoted and reconciled only by treating the statutory mandate as one directed to this court in its supervisory role. RSA 490:4. We will enforce the time limitation under this statute by entertaining complaints against a dilatory judge, whether raised by appeal or by petition addressed to our original jurisdiction, unless non-compliance is *de minimis.* Where the time limits are not being observed in the future we will order prompt action. We may order that provision be made by the judge in question to obtain supplementary judicial help, and we will where appropriate initiate judicial disciplinary proceedings.

Upon our review of the record, we further hold that the trial court did not err as a matter of law and that there is sufficient evidence to support its findings. *See Hynes v. Whitehouse,* 120 N.H. 417, 421, 415 A.2d 876, 878 (1980).

*Affirmed.*

All concurred.