Strafford
No. 83-457
No. 84-051

THE STATE OF NEW HAMPSHIRE *ex rel.*
RONALD A. MCLELLAN

v.

RICHARD CAVANAUGH, SHERIFF *& a.*

THE STATE OF NEW HAMPSHIRE

v.

RONALD A. MCLELLAN

August 5, 1985

34

*Stephen E. Merrill,* attorney general (*Robert B. Muh,* attorney, on the brief), by brief for the State.

*James E. Duggan,* appellate defender, of Concord, by brief for the defendant.

SOUTER, J.  These are consolidated appeals from the denial of relief that Ronald A. McLellan sought by three separate pleadings: a petition for writ of habeas corpus, a motion to dismiss an indictment charging him with aggravated felonious sexual assault, and a motion to "expunge" a psychiatric report from the order sentencing him after conviction on that charge. The defendant rested each request on a 191-day delay in filing the pre-sentence psychiatric report in the criminal case, in violation of the statutory mandate that such a psychiatric evaluation be completed within 90 days from the order requiring it. RSA 173-A:3 (repealed by Laws 1983, 206:1). We affirm.

On January 13, 1983, the defendant pleaded guilty to aggravated felonious sexual assault, RSA 632-A:2, in return for a recommended sentence of three to ten years, with credit for pretrial confinement. The superior court accepted the plea but deferred sentencing until completion of a psychiatric evaluation bearing on the question whether the defendant was a dangerous sexual offender under RSA chapter 173-A (repealed 1983). Although RSA 173-A:3 (repealed 1983) mandated completion of such an evaluation within 90 days of the court's order requiring it, no report had been filed by October 17, 1983, the date of the defendant's petition for a writ of habeas corpus seeking release because of the delay. On the day set for hearing the petition, October 21, 1983, the psychiatrist filed the report, and the Trial Judge (*Contas,* J.) dismissed the petition.

Thereafter, as part of the criminal proceeding, the defendant relied on the delay in seeking relief under motions to dismiss the charge against him, to which he had previously pleaded guilty, and to expunge the tardy report. The Superior Court (*Temple,* J.) denied these motions and sentenced the defendant on December 28, 1983. He stated that he would not consider the report in determining the sentence, which he then ordered in accordance with the original plea agreement, giving credit for the time already served. He did, however, order that the report be appended to the sentencing order and recommended that any subsequent order of parole be predicated on the need to help the defendant in controlling his behavior. These appeals followed.

The defendant raises both statutory and constitutional grounds in support of the relief he seeks, and we will take up his statutory

claim first. He notes that RSA 173-A:3 (repealed 1983) provided that psychiatric examinations ordered in accordance with its provisions were to "take not more than 90 days." He argues that such language was mandatory in the sense that a delay in completing an examination beyond the statutory period deprived a sentencing court of jurisdiction to deal with the defendant or, in the alternative, somehow deprived the court or the State of authority to consider the tardy report of such an evaluation. Assuming that the quoted language may rightly be classified as mandatory rather than directory, see In re Robyn W., 124 N.H. 377, 379, 469 A.2d 1351, 1352 (1983), it does not necessarily follow that the language creates a jurisdictional limitation in any of the senses that the defendant claims. Id.

We have, of course, found legislative intent to impose just such a jurisdictional limitation when mandating time limits for holding adjudicatory hearings in delinquency or CHINS cases. In re Russell C., 120 N.H. 260, 268, 414 A.2d 934, 938 (1980). But we are unable to infer any such intent when the mandate is imposed to further a remedial or dispositional objective. For in that event the beneficent object of the statute would be defeated if the court were to lose personal jurisdiction for failure to satisfy a time limitation. In re Robyn W., supra at 381, 469 A.2d at 1353; see In re Jane Doe, 126 N.H. 719, 495 A.2d 1293 (1985).

▪ This case falls within the latter rule. The apparent object of the former statute requiring psychiatric examinations was to allow the trial court to address the psychological problem of the defendant who committed sexual crimes. See Grindle v. Miller, 119 N.H. 214, 400 A.2d 787 (1979). Since the post-conviction psychological evaluation had no bearing or effect on the determination of guilt or innocence, delay beyond the statutory evaluation period should not, without more, have had any bearing on the validity of the conviction itself. Since delay likewise had no apparent bearing on the soundness of any conclusions reached in the psychiatric evaluation, delay should not have had any effect on the use that the State might make of a report of such an evaluation. Thus, there is no reason to vacate an apparently sound adjudication, or to deprive the State and the defendant of any value that the examination and report may have in the future. It follows that the mandate for prompt evaluations was one to be vindicated by exercising the court's power to require dilatory psychiatrists to meet statutory deadlines, rather than by sapping the court's power over guilty defendants. See In re Robyn W., supra at 381, 469 A.2d at 1353.

In so concluding that the time limitations are not jurisdictional, we have not ignored our obligation to construe a statute so as to

avoid unconstitutionality, where that is possible. *See State v. Smag-ula*, 117 N.H. 663, 666, 377 A.2d 608, 610 (1977). Our reading of the statute produces no unconstitutional result in this case, however, as an examination of the defendant's constitutional claims will reveal.

We first consider issues raised under the State Constitution, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), citing authority from other jurisdictions solely for their helpfulness in making our own analysis. *See Michigan v. Long*, 103 S. Ct. 3469, 3476 (1983). The defendant's State constitutional claim is not wholly clear, but we understand him to be arguing that the delay in sentencing, caused in large part by the delay in completing the psychiatric evaluation, denied him his right to a speedy disposition of his case in violation of part I, article 14 of the Constitution of New Hampshire.

■ Conceptually, it would be possible to consider a speedy disposition issue either under article 14, with its guarantee of justice "promptly and without delay," or under the broader guarantee of due process under article 15, which we have interpreted generally to impose a requirement of fundamental fairness. *See Claremont v. Truell*, 126 N.H 30, 36, 489 A.2d 581, 586 (1985). We think that clarity will be served by considering the issue under article 14. That provision is the source of the State's speedy trial requirement, *State v. Langone*, 127 N.H. 49, 51, 498 A.2d 731, 733 (1985); *State v. White*, 116 N.H. 687, 688, 366 A.2d 872, 873 (1976), and there are close analogies between considerations that underlie the guarantee of speedy trial and those that support the demand for speedy disposition.

■ The guarantee of speedy trial serves to prevent undue and oppressive pretrial incarceration, to minimize the anxiety that attends public accusation, and to limit the risk that a long delay might impair the ability of the accused to defend himself. *United States v. Ewell*, 383 U.S. 116, 120 (1966). A call for speedy disposition after trial addresses similar concerns: that indefinite incarceration could exceed the length of a fair sentence; that extended and indefinite uncertainty about disposition could destroy the opportunity for a defendant to perceive a fair relationship between guilt and penalty; and that delay in completing the trial process could prejudice both the State and the defendant if a retrial should be ordered on appeal.

■■ The similarity of these sets of policy considerations convinces us that a right to a reasonably speedy disposition should be recognized under article 14, as a complement to the defendant's

right to speedy trial. We caution, however, that in finding this common source for both rights, we do not intend to suggest that a violation of the right to speedy disposition will require the remedy of dismissal that is appropriate for violation of the right to speedy trial.

■ Because, again, of the similar policy objectives behind both speedy trial and speedy disposition rights, we believe that a similar analytical approach should govern the application of these rights to concrete cases. Just as there is no black letter, or black number, standard for evaluating speedy trial claims, *see State v. White*, 116 N.H. at 688, 366 A.2d at 873; *Barker v. Wingo*, 407 U.S 514, 521 (1972), there can be no mechanical rule for determining whether the right to speedy disposition has been infringed. In each case the question must necessarily be whether the delay has been unreasonable. And in each case we answer it by following the analysis announced in *Barker*, by looking to the length of the delay, the reason for it, the defendant's action or inaction in demanding greater promptness, and the prejudice caused. *Barker v. Wingo*, 407 U.S. at 530.

■■ The significance of the length of delay in disposition must be assessed in relation to the potential penalty. While the delay here was 191 days, the minimum penalty was potentially seven and one-half years, and the plea agreement was for a three-year minimum. Measured against these periods, the delay of 191 days was not presumptively prejudicial. *See State v. Quinlan*, 122 N.H. 51, 53, 440 A.2d 13, 14 (1982). We will nonetheless proceed to consider the other *Barker* factors in this case of first impression.

■ In this case we have no opportunity to evaluate the reason for the delay, for it is not apparent on the record. Therefore we turn next to consider the defendant's own timing in making his demand for speed. It is noteworthy that he waited 187 days before objecting to the delay by filing his petition for habeas corpus. While the length of this acquiescence is not dispositive, it may be considered in determining how much weight to give any indication of prejudice resulting to the defendant from the delay. *See Gonzales v. State*, 582 P.2d 630, 634–35 (Alaska 1978).

In the case before us, however, we find no such indication of prejudice. Nothing suggests that the defendant will serve so much as a day longer as a result of the delay. He received the minimum term called for in the plea bargain, and at the time of sentencing he had not served more than the period required for earliest parole eligibility. Although the defendant has suggested that he was prejudiced because his pre-sentence incarceration did not entitle him to so-

called good-time credit, *see* RSA 651-A:22 (Supp. 1983), this suggestion misconceives the relationship between good-time credits and the sentence in felony cases. Under RSA 651-A:22, III (Supp. 1983), good-time credits reduce only the additional disciplinary period, added to felony sentences under RSA 651:2, II-e (Supp. 1983), and the maximum term of such a sentence. Good-time credits do not reduce the minimum term, which as a practical matter governs a prisoner's release date. Since the trial court was careful not to impose any disciplinary period except on the balance of the three-year minimum less time already served, the delay in sentencing did not affect the defendant's parole eligibility date to his prejudice. Any claim of prejudice from a failure to reduce the maximum term of the sentence is entirely speculative.

The only other apparent claim of prejudice arises from the motion to expunge and relates to the trial judge's order attaching the report of the psychiatric evaluation to the sentencing order, for consideration by prison and private authorities. The defendant suggests that the report's disclosure of prior, unprosecuted sex offenses will prejudice his chances for early parole under RSA 651-A:6 (Supp. 1983). This argument, however, confuses the content of the report with its timing. Whatever harm the report may do to the defendant's opportunity for parole has no causal connection with the date the report was signed. The use of the report would not, therefore, be prejudicial for purposes of a *Barker* analysis, and suppression of the report could not serve to enforce the right to speedy disposition.

Since we find no prejudice flowing from the delay, we do not find the delay so unreasonable as to call for a remedy under article 14, and we turn to the defendant's claims under the Constitution of the United States. Here, again, his position is not very clear, and although he has spoken broadly of equal protection and due process, we understand him to focus on his right to speedy disposition as an element of his right to speedy trial under the sixth and fourteenth amendments. *See Klopfer v. North Carolina*, 386 U.S. 213, 221–22 (1967).

Although we read the federal cases as recognizing a speedy disposition right, we read those cases as establishing the same standard that we have applied under article 14, and leading to the same result. If the Supreme Court has gone no further than to assume *arguendo* that there is a right to speedy sentencing, *Pollard v. United States*, 352 U.S 354, 361–62 (1957), the lower federal courts have nonetheless taken this as "strong indication" that the sixth amendment has application to the time between conviction and sentencing. *Brady v. Superintendent Anne Arundel Co. Det. Ctr.*,

443 F.2d 1307, 1310 (4th Cir. 1971); *see Gonzales v. State*, 582 P.2d at 632 nn.5 & 6. While the Supreme Court in *Pollard* reviewed the claim by asking whether the delay was purposeful or oppressive, *Pollard v. United States*, 352 U.S. at 361, later federal cases have applied the *Barker v. Wingo* analytical framework, *see, e.g., Gable v. Massey*, 566 F.2d 459 (5th Cir.), *cert. denied*, 435 U.S. 975 (1978); *United States v. Reese*, 568 F.2d 1246 (6th Cir. 1977); *United States v. Tortorello*, 391 F.2d 587 (2d Cir. 1968), and have emphasized the burden on a defendant to demonstrate prejudice whenever it is not implicit in the circumstances. *Brady v. Superintendent, supra* at 1310–11. Thus, we conclude that a *Barker* analysis is appropriate in assessing the federal claim as well as the State claim, with the same result in each instance.

The superior court properly denied habeas corpus and the motions to dismiss and to expunge.

*Affirmed.*

All concurred.