Plymouth Family Division
No. 2004-777

WENDY L. MCCARTHY

v.

ROBERT E. WHEELER

Argued: July 13, 2005
Opinion Issued: October 18, 2005

*Barbara L. Parker*, of Newport, by brief and orally, for the plaintiff.

*Clauson & Atwood*, of Hanover (*George E. Spaneas* on the brief and orally), for the defendant.

DALIANIS, J. The defendant, Robert E. Wheeler, appeals an order of the Family Division at Plymouth (*Carbon*, J.) denying his motion to dismiss the domestic violence petition filed by the plaintiff, Wendy L. McCarthy. We reverse.

The plaintiff and the defendant have a son together, but were never married. The plaintiff has custody of their son, who was ten years old when the following events took place.

On August 12, 2004, the defendant threatened the plaintiff over the phone. On August 13, 2004, the plaintiff filed a domestic violence petition and was granted a temporary restraining order by the Family Division at Lebanon; the case was then transferred to the Family Division at Plymouth. A hearing on the restraining order was scheduled for August 26, 2004, but had to be rescheduled because the presiding judge recused

himself due to a conflict of interest; the hearing was eventually scheduled for October 12, 2004.

On August 30, 2004, the court received the defendant's request for a hearing. The motion was captioned "MOTION FOR IMMEDIATE HEARING." It included a request for "an immediate hearing on the Lebanon District Court's unjustified and overbroad ex parte temporary orders." In the prayer for relief, the defendant asked the court to "[s]chedule a hearing on the petition as soon as possible."

A hearing on the merits of the domestic violence petition was held on October 12, 2004. At that hearing, the defendant moved to dismiss the petition on the ground that the trial court failed to hold "a hearing on the temporary abuse orders within the time mandated by RSA 173-B:4." The defendant also argued that RSA 173-B:3, VII, which requires the court to hold a hearing on the domestic violence petition within thirty days of its filing, had similarly been violated.

The trial court denied the defendant's motion to dismiss, stating:

> The first hearing where issues of visitation and property could be addressed occurred on September 16, 2004. While this did exceed the thirty day timeframe for conducting a final hearing, the Court finds the delay of three days for the reasons set forth above was not unreasonable. Further, a full merits hearing was scheduled for October 12, 2004, the delay being necessitated by the [defendant's] request for a lengthier hearing.
>
> In summary, the Court finds the [defendant's] liberty and property interests were protected. The court finds that a final hearing was originally set within two weeks time and but for a conflict with the assigned judge, the hearing could have been conducted on that day. . . . The final hearing was continued on one occasion, without objection by the [defendant], in order that [plaintiff's] counsel be available."

RSA 173-B:4, I (2002) states in relevant part:

> If non-telephonic temporary orders are made ex parte, the party against whom such relief is issued may file a written request with the clerk of the court and request a hearing on such orders. Such hearing shall be held no less than 3 business days and no more than 5 business days after the request is received by the clerk.

Thus, the hearing on the temporary restraining order should have been held within five business days of August 30, 2004. RSA 173-B:3, VII (2002) states: "The court shall hold a hearing within 30 days of the filing of a petition under this section or within 10 days of service of process upon the

defendant, whichever occurs later." Therefore, the hearing on the domestic violence petition should have been held within thirty days of August 13, 2004. Though she concedes that both statutes were violated, the plaintiff urges us to uphold the trial court's order, arguing that dismissal is not the correct remedy.

The use of the word "shall" is generally regarded as a command; although not controlling, it is significant as indicating the intent that the statute is mandatory. This is especially so where the purpose of the statute is to protect private rights. *In re Russell C.*, 120 N.H. 260, 264 (1980).

The plaintiff concedes that the use of the word "shall" indicates a legislative mandate. She contests, however, that dismissal is a proper remedy for the violations of the legislative mandates in this case. Where the legislature has not provided how its mandate is to be enforced, we must determine the appropriate mode of enforcement. *Appeal of Martino*, 138 N.H. 612, 615 (1994). Our inquiry focuses upon two factors: consideration of the statutory goals and consideration of whether the party seeking relief has shown prejudice as a result of the statutory violation. *Id.*

Where the legislature, out of liberty interest concerns, has mandated time limits for holding hearings, we have held that personal jurisdiction over a defendant is lost, absent waiver, if the case is not heard within the statutory period. *Id.*

Since the two statutes at issue share an identical purpose, we will address them together. The purpose of RSA chapter 173-B is "to preserve and protect the safety of the family unit for all family or household members by entitling victims of domestic violence to immediate and effective police protection and judicial relief." Laws 1999, 240:1, II. It is to be liberally construed to effect this purpose. *Id.* This purpose is to be balanced with the liberty interests of the accused, however, as the legislature recognized in its debates:

> It was clear last year that the bill that was presented initially, didn't properly balance the rights of all of the parties and interest, [*sic*] .... I am pleased this year that the House took the initiative and ... passed out a bill that is more acceptable and more in-balanced [*sic*] with the interest of the parties.

N.H.S. JOUR. 1297 (1999) (remarks of Senator Gordon). "The committee believes that this bill presents improvements and *fair treatment for all parties* during times of great emotional stress." N.H.H.R. JOUR. 648 (1999) (remarks of Representative Christie) (emphasis added).

In *Russell C.*, we examined RSA 169-B:14, II (2002) and RSA 169-D:13, II (2002), concerning the statutory time limits for adjudicatory hearings for juveniles alleged to be either "delinquent" or "children in need of

services." *Russell C.*, 120 N.H. at 263, 268. We held that "the time limits prescribed ... effectuate a substantive right requiring the court to forfeit jurisdiction if not complied with, unless such noncompliance is the result of a delay caused or requested by the juvenile, in which case he will be deemed to have waived the time limits." *Id.* at 268. The juvenile's liberty interest triggered the need for due process safeguards. *Id.*

The statutes at issue in this case are intended to protect similar rights. It hardly bears mentioning that a restraining order restrains one's liberty. The temporary restraining order entered against the defendant restrained him from a number of legal activities, including contacting the plaintiff, possessing firearms and, most importantly, seeing their son. In order for these liberty interests to be adequately protected, a defendant must have access to a hearing.

Just as the mandatory time limits on juvenile adjudicatory hearings under RSA chapter 169-B and RSA chapter 169-D are a "legislative pronouncement of a child's right to the expeditious resolution of his alleged delinquency or 'need for services' rooted in his right to due process," *Russell C.*, 120 N.H. at 266, so are the time limits at issue here a pronouncement of a defendant's right to quickly challenge and resolve the restraints placed upon him by another's allegations. The violation of these time limits is itself prejudicial to the defendant's due process rights.

 Since these hearings are designed to protect a defendant's substantive rights, the court's failure to hold them must result in dismissal of the domestic violence petition, unless the delay was caused or requested by the defendant. *See id.* There is no evidence that the defendant was responsible for the court's delay in holding either of these hearings. To remedy the violation of RSA 173-B:4, I, the temporary orders must be dismissed. To remedy the violation of RSA 173-B:3, VII, the domestic violence petition must be dismissed. We note that nothing in RSA 173-B precludes the refiling of a domestic violence petition based upon the same or similar allegations after a petition has been dismissed for violation of RSA 173-B:4, I, or RSA 173-B:3, VII.

The plaintiff argues that the purpose of the statute would be frustrated by dismissing the petitions if a hearing is not held as required. In *In re Eric C.*, a juvenile defendant was not afforded a hearing within the thirty days required by statute because the court was closed by a snow emergency. *In re Eric C.*, 124 N.H. 222, 224 (1983). In that case, we reaffirmed our holding in *Russell C.* that the time limits were rooted in the juvenile's right to due process. We acknowledged that enforcement of mandatory time limits could arguably defeat the goals of the statute when

strictly applied; however, this result was intended by the legislature, and we did not find it absurd, unjust, or illogical. *Id.* at 225.

Similar reasoning prevails here. Enforcement of the mandatory time limits may have the effect of defeating the goals of the domestic violence statute when strictly applied. As noted above, the goals of protecting the victims of domestic violence must be carefully balanced against the rights of the defendant. We do not, therefore, find the resultant dismissal absurd, unjust or illogical.

The plaintiff finally argues that the defendant did not object to the fact that he did not receive the requested hearing until October 12, 2004. It is not the defendant's responsibility to remind the court of the legislature's mandatory instruction, however. Accordingly, we do not find this argument persuasive.

Since we reverse the trial court's order on jurisdictional grounds, we need not address the merits of the petition.

*Reversed.*

NADEAU and DUGGAN, JJ., concurred; BRODERICK, C.J., with whom GALWAY, J., joined, dissented.

BRODERICK, C.J., dissenting. I agree with the majority that the time limits contained in the statutes are mandatory. I write separately, however, because I disagree that the failure to meet the time standards in this case requires the dismissal of the petition.

The record supports the following. During a telephone call on August 12, 2004, between the defendant, Robert E. Wheeler, and the plaintiff, Wendy L. McCarthy, concerning their son, Wheeler threatened McCarthy with physical harm. The Enfield Police Department assisted McCarthy in obtaining an emergency protective order by telephone through the Lebanon District Court (*Sadler*, J.). *See* RSA 173-B:4, I (2002). On August 13, McCarthy filed a domestic violence petition; the Family Division (*Yazinski*, J.) granted a non-telephonic, *ex parte* temporary protective order. *Id.* The matter was transferred to the Family Division at Plymouth for a hearing, scheduled on August 26. On that date, with both parties present with counsel, the Presiding Judge (*Rappa*, J.) determined that he could not hear the case because of his prior attorney/client relationship with the defendant, and the case was to be rescheduled at the court's "earliest convenience."

On August 27, the defendant moved for an immediate hearing, arguing that the August 13 visitation order was "unjustified and overbroad"; the court received that motion on August 30. A hearing was scheduled for September 9 on the issue of visitation; it was rescheduled, due to the

unavailability of the plaintiff's counsel on that date, and held on September 16. A hearing on the merits was scheduled for October 12; the trial court found that the delay from September 16 was "necessitated by the [defendant's] request for a lengthier hearing." On October 12, the court received the defendant's motion to dismiss, which argued that the court "must dismiss the domestic violence petition" because of the failure to hold a hearing within the time limits prescribed by RSA 173-B:3, VII (2002) and RSA 173-B:4, I. The Trial Court (*Carbon*, J.) denied the motion, stating:

> It was not until August 30, 2004 that the [defendant] requested a hearing as soon as possible. The Court, by that time, had already convened a hearing on August 26, 2004, and had rescheduled the hearing for September 9. While that hearing did not occur within the three to five day timeframe as set forth in RSA 173-B:3 VII, the Court finds that it did, in fact, convene a hearing only to discover the conflict of interest with the assigned judge that had not been identified earlier, notwithstanding the Court's written Order stating that Judge Rappa would be assigned to the case. The [defendant] himself did not bring this to the Court's attention prior to the hearing.
>
> The first hearing where issues of visitation and property could be addressed occurred on September 16, 2004. While this did exceed the thirty day timeframe for conducting a final hearing, the Court finds the delay of three days for the reasons set forth above was not unreasonable. Further, a full merits hearing was scheduled for October 12, 2004, the delay being necessitated by the [defendant's] request for a lengthier hearing.
>
> In summary, the Court finds the [defendant's] liberty and property interests were protected. The Court finds that a final hearing was originally set within two weeks time and but for a conflict with the assigned judge, the hearing could have been conducted on that day. A hearing before a new judge was scheduled as soon as possible.

Neither party has argued that the August 26 proceeding, which the trial court termed a hearing, precluded the defendant's motion under RSA 173-B:4, I, or satisfied the mandate of RSA 173-B:3, VII, and I express no opinion thereon. *But cf. In re Juvenile 2004-469*, 151 N.H. 706, 707 (2005). Assuming that the August 26 proceeding did not satisfy the mandate of the statutes, I agree with the majority's explanation that the hearing on the protective order should have been held within five business days of August 30, 2004, *see* RSA 173-B:4, I, and the hearing on the domestic violence

petition should have been held within thirty days of August 13, 2004, *see* RSA 173-B:3, VII.

While I agree with the majority that the time limits contained in the statutes are mandatory, "the legislature has not provided how that mandate is to be enforced; therefore, we must determine the appropriate mode of enforcement." *Appeal of Martino*, 138 N.H. 612, 615 (1994). "Our inquiry in similar cases has generally focused on two factors: consideration of the statutory goals, and consideration of whether the party seeking relief has shown prejudice as a result of the statutory violation." *Id.* (citations omitted); *see Smith v. N.H. Bd. of Psychologists*, 138 N.H. 548, 551 (1994).

With regard to the first factor, I share the majority's view that the two statutory provisions share an identical purpose and may be addressed together. As declared by the statement of purpose in the act promulgating RSA chapter 173-B:

> I. It is the public policy of this state to prevent and deter domestic violence through equal enforcement of the criminal laws and the provision of judicial relief for *domestic violence victims*.
>
> II. It is the purpose of this act to preserve and protect the safety of the family unit for all family or household members by entitling *victims of domestic violence* to immediate and effective police protection and judicial relief. This act shall be liberally construed to the end that its purpose may be fulfilled.

Laws, 1999, 240:1 (emphasis added). Thus, the explicitly stated purpose of the statute is to provide immediate and effective police protection and judicial relief to the victims of domestic violence. Further, the legislature has explicitly mandated that the statute be liberally construed in providing that protection and judicial relief to such victims. Nowhere in the statement of purpose or the mandate for liberal construction is there any reference with regard to the perpetrators of domestic violence. As such, I cannot agree with the majority that the liberty interests of the accused enter into the calculus described by *Martino*, 138 N.H. at 615.

The majority cites to comments from Senator Gordon and Representative Christie to support its statement that the legislature recognized that the stated purpose of the statute must be "balanced with the liberty interests of the accused." I disagree. First, I believe that a reading of both legislators' full remarks indicates that the balance referred to was one geared, not to the general liberty interests of the accused, but to the interests of "those individuals who had an interest in possessing firearms," N.H.S. JOUR. 1297 (1999) (remarks of Sen. Gordon), and toward the deterrence of "a false allegation of abuse" and the proper storage and

possible return of firearms to the subjects of a domestic violence petition, N.H.H.R. JOUR. 648 (1999) (remarks of Rep. Christie). Second, even if I accepted that both legislators' remarks were in concert with the majority's proposed balancing, that does nothing to abrogate the fact that both legislators rose in support of the legislation and its explicit statement of purpose to provide immediate and effective police protection and judicial relief to the *victims* of domestic violence. Finally, I see nothing in those legislators' comments to indicate that they would want the victim of domestic violence in this case to receive *no* protection and relief from the judicial system where, through no fault of the parties, a court failed to hold a hearing within the prescribed time limits.

The majority cites to *In re Russell C.*, 120 N.H. 260 (1980), and *In re Eric C.*, 124 N.H. 222 (1983), to support its position that the failure of the court in this case to comply with the statutory time limits requires dismissal of the domestic violence petition, because the "statutes at issue in this case are intended to protect similar rights" to those in the two juvenile cases. I respectfully disagree.

It is correct that in both *Russell C.* and *Eric C.*, we held that a court's failure to hold adjudicatory hearings within mandatory time limits required the dismissal of petitions brought pursuant to RSA 169-B:14, II (delinquent children) and RSA 169-D:13, II (children in need of services), based upon the juveniles' liberty interest and right to due process. *Russell C.*, 120 N.H. at 267-68; *Eric C.*, 124 N.H. at 224-25; *see Smith*, 138 N.H. at 551. In both cases, however, the statutes at issue had significantly different purposes than those of RSA chapter 173-B.

> The purposes and procedures delineated in RSA ch. 169-B ... and RSA ch. 169-D ... reflect the paramount concern for the welfare of the child and the desire to divorce juvenile proceedings from the criminal process whenever possible. The prescription of mandatory time limits, however, also reflects the concurrent legislative concern for procedural due process.
>
> . . . .
>
> [I]t is the juvenile's liberty interest that triggers the need for due process safeguards.

*Russell C.*, 120 N.H. at 267-68. Further,

> RSA chapter 169-B is part of a comprehensive juvenile justice system that has as its primary concern the welfare of the child. It guarantees children their constitutional rights, and encourages the use of rehabilitative and treatment resources whenever

possible. The primary goal of the juvenile law is to treat and not to punish.

*Eric C.*, 124 N.H. at 224 (quotations, brackets, and ellipses omitted).

In sum, I believe that the legislative intent underpinning both RSA chapter 169-B and RSA chapter 169-D is far different from that of RSA chapter 173-B, with its explicitly stated purpose to provide immediate and effective police protection and judicial relief to the victims of domestic violence. In addition, I believe that the liberty interests of a juvenile subject to a petition under either RSA 169-B:14, II or RSA 169-D:13, II are significantly different from the liberty interest of the defendant, subject to temporary protective orders under RSA chapter 173-B. In the former, the juvenile faces the potential for a true deprivation of liberty; in the latter, the orders may temporarily infringe upon the defendant's movement, and his ability to see his son or possess firearms or ammunition.

Further, I believe that the instant case is far more akin to *In re Robyn W.*, 124 N.H. 377 (1983). There, the statute at issue was RSA 170-C:11, V, which provided that a court in a parental rights termination proceeding "shall issue a decision which shall include a disposition not later than 60 days after the date of the final hearing." *Robyn W.*, 124 N.H. at 379 (quotation and emphasis omitted); *see* RSA 170-C:11, V (2002). Through no fault of either party, the probate court failed to comply with the statutory time limit and issued a decision to terminate the defendant's parental rights 206 days after the statutory deadline. The defendant argued that the failure of the court to comply with the statute required dismissal of the termination petition. *Id.* at 378-79. After determining that the statutory time limit was mandatory, we looked to the statutory goals of RSA chapter 170-C to decide how to give effect to that mandate. We noted that the statute had two objectives: first, to promote the welfare of a child who has suffered from any variety of parental wrongdoing or incapacity; and second, to provide a speedy disposition for the sake of the child's welfare and the interest of the parent whose parental rights may be terminated. *Id.* at 380-81. We rejected the defendant's argument, stating:

> While the interest of the parent would be vindicated by treating the mandatory time limitation as jurisdictional and by requiring dismissal of the petition ..., the statute's other objectives would be thwarted by such a course. Dismissal would penalize the interest of the child. This would be an illogical result.

*Id.* Instead, we stated:

We find that the various interests may be promoted and reconciled only by treating the statutory mandate as one directed to this court in its supervisory role. RSA 490:4. We will enforce the time limitation under this statute by entertaining complaints against a dilatory judge, whether raised by appeal or by petition addressed to our original jurisdiction, unless non-compliance is *de minimus*. Where the time limits are not being observed in the future we will order prompt action. We may order that provision be made by the judge in question to obtain supplementary judicial help, and we will where appropriate initiate judicial disciplinary proceedings.

*Id.*; *see State ex rel. McLellan v. Cavanaugh*, 127 N.H. 33, 36 (1985); *In re Billy T.*, 124 N.H. 576, 578 (1984); *cf. Juvenile 2004-469*, 151 N.H. at 707.

While the defendant's interest in a speedy disposition of the proceedings would be vindicated by granting his motion to dismiss, the statute's explicitly delineated purpose to protect and provide judicial relief to the victims of domestic violence would be thwarted. Consequently, I cannot accept the majority's analysis, which states that the hearings at issue "are designed to protect a defendant's substantive rights," and which calls for dismissal as the appropriate mode of enforcement here.

Were the domestic violence petition to be dismissed in this case because of the court's failure to comply with the mandatory time limits, the majority notes that nothing in RSA chapter 173-B would preclude the refiling of the petition upon the same or similar allegations. Although I agree that the statute does not preclude refiling the petition, dismissal and refiling would further contravene the statute's explicitly stated purpose. Here, upon dismissal of the petition, the victim would be without protection until a second petition is filed and a new protective order is issued. Once a petition is refiled, *both* the victim and the accused would face a second waiting period of up to thirty days for a hearing. In my opinion, such a course of action would tread even further on the interests of both the victim and the accused.

We have acknowledged that it "is not our function to redraft legislation to make it conform to an intention not fairly expressed in the language of the statute." *Russell C.*, 120 N.H. at 268; *Eric C.*, 124 N.H. at 225 (quotation omitted). Where, as here, however, the statute's purpose is explicitly stated, it cannot be our function to reach an outcome that disregards that purpose. It would be unwise to reject the purpose of the statute by turning it on its head and construing it liberally, not in favor of protecting victims of domestic violence, but in favor of protecting alleged

perpetrators, with the consequence of denying the victims the immediate protection and judicial relief intended by the legislature.

Although I believe that the vindication of the statute's paramount purpose—the protection and provision of judicial relief to the victim—precludes dismissal in this case, I briefly address whether the defendant has shown prejudice as a result of the statutory violation. In order to warrant a dismissal under the statute in this case, I believe the defendant would have to demonstrate that he was prejudiced in fact by the delay of the scheduled hearings, and that the prejudice outweighed the vindication of the statute's paramount purpose. *See Smith*, 138 N.H. at 551; *Appeal of Maddox a/k/a Cookish*, 133 N.H. 180, 183 (1990). I do not believe that there has been any such showing on the part of the defendant in this case.

For all the reasons stated, I respectfully dissent. The respondent raises other issues on appeal that are not reached in the majority opinion. I do not reach these issues and reserve my opinion thereon. *See Cyr v. J.I. Case Co.*, 139 N.H. 193, 210 (1994) (Horton, J., dissenting).

GALWAY, J., joins in the dissent.