NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Hillsborough-northern judicial district
No. 2019-0369

IN RE D.O.

Submitted: November 20, 2019
Opinion Issued: February 13, 2020

Gordon J. MacDonald, attorney general (Laura E. B. Lombardi, senior assistant attorney general, on the memorandum of law), for the petitioner.

Smith-Weiss Shepard, P.C., of Nashua (Tanya L. Spony on the brief), for the respondent.

HANTZ MARCONI, J. The respondent, the father of the juvenile (Father), appeals an order of the Superior Court (Nicolosi, J.) denying his motion for permission to file a late appeal of an adverse ruling issued by the Circuit Court (Ryan, J.) on an abuse and neglect petition brought by the petitioner, the New Hampshire Division for Children, Youth and Families (DCYF). The superior court found that Father failed to demonstrate "good cause" for filing a late appeal. We reverse the superior court's denial of Father's motion to file a late appeal and remand.

The relevant facts follow. On December 11, 2018, the circuit court issued an adjudicatory order in an abuse and neglect proceeding, finding that Father had neglected his daughter, D.O., and that D.O.'s mother (Mother) had both abused and neglected her. The dispositional hearing was held on January 15, 2019. According to Father and not disputed by DCYF, Mother timely appealed the circuit court's final dispositional order concerning her to the

superior court. Ninety-two days after the circuit court issued its final dispositional order concerning Father, he moved for permission to file a late appeal. Father averred that the attorney for the child and the attorney for the child's mother had assented to his late filing, that his attorney had not filed the motion earlier because she was out on maternity leave, that there had been "a misunderstanding regarding the filing of the appeal," and that the parties had not yet appeared in superior court.

DCYF objected, arguing that the superior court lacked subject matter jurisdiction over Father's appeal because he failed to file it within the 30-day deadline imposed by RSA 169-C:28, I (2014). Father countered that his failure to comply with the appeal period did not deprive the superior court of subject matter jurisdiction. The superior court denied Father's motion, stating: "Having considered the history of this case and the reasons provided for failing to file [an] appeal in a timely manner . . . , no good cause is found to allow the late appeal."[1] This appeal followed.

Thereafter, Mother moved to recuse the superior court judge for reasons unrelated to this appeal. In its order granting that motion, the superior court noted that Father's appeal of its denial of his motion to file a late appeal was pending in this court and that "[t]he parties prefer [their] cases to be tried together in the event the decision is reversed."

"Subject matter jurisdiction is jurisdiction over the nature of the case and the type of relief sought: the extent to which a court can rule on the conduct of persons or the status of things." Appeal of Cole, 171 N.H. 403, 408 (2018). "In other words, it is a tribunal's authority to adjudicate the type of controversy involved in the action." Id. "A court lacks power to hear or determine a case concerning subject matter over which it has no jurisdiction." Id. "A party may challenge subject matter jurisdiction at any time during the proceeding, including on appeal, and may not waive subject matter jurisdiction." Id.

Whether compliance with a statutory appeal period is intended as a prerequisite to the appellate court having subject matter jurisdiction is a matter of legislative intent. See Phetteplace v. Town of Lyme, 144 N.H. 621, 624-25 (2000). Thus, determining whether the failure to comply with the 30-day appeal period in RSA 169-C:28 (2014) deprived the superior court of subject matter jurisdiction requires that we engage in statutory interpretation.

---

[1] We interpret the superior court's order as a determination that the statutory appeal period set forth in RSA 169-C:28, I, is not jurisdictional, that the court may waive it for "good cause," and that Father failed to demonstrate "good cause." See In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008) (explaining that the meaning of a trial court order raises an issue of law and that we interpret the order de novo).

We review the superior court's statutory interpretation de novo. Petition of Carrier, 165 N.H. 719, 721 (2013). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. Id. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Id. Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole. Id. This construction enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. Id.

RSA 169-C:28 provides the only statutory right of appeal from a final dispositional order in an abuse or neglect proceeding. See In re C.O., 171 N.H. 748, 759 (2019). Pursuant to RSA 169-C:28, I, "[a]n appeal . . . may be taken to the superior court by the child or the child's authorized representative or any party having an interest, including the state, or any person subject to any administrative decision pursuant to [RSA chapter 169-C], within 30 days of the final dispositional order." If an appeal is filed under RSA 169-C:28, I, the superior court must hear the matter de novo. RSA 169-C:28, I.

Father argues that RSA 169-C:28, I, does not, in fact, require that appeals be filed within thirty days of a final dispositional order because the statute uses the word "may." Although Father is correct that the word "may" is permissive, in context, the word does not modify the appeal period, but rather refers to the discretion of the party who, having received a final dispositional order from the circuit court, may then decide whether or not to appeal it. See Mt. Valley Mall Assocs. v. Municipality of Conway, 144 N.H. 642, 652 (2000) (explaining that the last antecedent rule of statutory construction generally requires that qualifying phrases are to be applied to the words or phrases immediately preceding and are not to be construed to apply to others more remote).

DCYF argues that the superior court lacked subject matter jurisdiction over Father's appeal because he failed to file it within the statutory deadline. To support its argument, DCYF relies upon cases discussing appeals from administrative bodies. In that context, we have held that compliance with a statutory deadline for filing an appeal "is a necessary prerequisite to establishing jurisdiction in the appellate body." Dermody v. Town of Gilford, 137 N.H. 294, 296 (1993) (quotation omitted). In Dermody, for instance, which involved a challenge to a planning board decision under RSA chapter 677, we explained that "[f]iling an appeal in a timely manner vests the superior court with subject matter jurisdiction," and that because the plaintiffs did not file

3

their appeal within the requisite statutory appeal period, "subject matter jurisdiction was never conferred upon the superior court." Id.; see Appeal of Carreau, 157 N.H. 122, 123 (2008) (addressing administrative board appeals under RSA chapter 541).

In that context, we have also held that courts lack authority to waive jurisdictional deadlines for equitable reasons: if an appeal is filed just one day late, it must be dismissed. See Appeal of Cole, 171 N.H. at 408; see also United States v. Cotton, 535 U.S. 625, 630 (2002) (explaining that because "subject-matter jurisdiction . . . involves a court's power to hear a case," a lack of subject matter jurisdiction "can never be forfeited or waived"); In re Doe, 126 N.H. 719, 725 (1985) (clarifying that a party may waive a defect in personal jurisdiction, but may not waive a defect in subject matter jurisdiction).

In Phetteplace, we extended our reasoning from cases developed in the administrative appeal context to appeals governed by RSA 76:17 (Supp. 2019), which concerns petitions to the superior court challenging municipal denial of tax abatement requests. Phetteplace, 144 N.H. at 623-25. RSA 76:17 provides, in pertinent part, that "[t]he appeal shall be filed on or before September 1 following the date of notice of tax." In Phetteplace, we held that the requirement to file an appeal to the superior court by September 1 was a necessary prerequisite to vesting that court with subject matter jurisdiction over the appeal. Phetteplace, 144 N.H. at 625. The legislature, we explained, "could not have more clearly expressed its intent to require appeals to be filed by a date certain." Id. at 624. Accordingly, we held that when the plaintiffs failed to file their appeal by September 1, "the superior court did not have jurisdiction to hear their appeal and properly dismissed it." Id. at 625; cf. Appeal of City of Concord, 161 N.H. 169, 172-73 (2010) (deciding that a taxpayer's failure to file an abatement petition within the statutory time period deprived the New Hampshire Board of Tax and Land Appeals of appellate jurisdiction).

In the cases described above, without any extended analysis, we equated statutory appeal periods that are mandatory with statutory time limits that are jurisdictional in the subject matter sense. DCYF invites us to further extend this reasoning, developed in the administrative appeal context, to appeals brought under RSA 169-C:28, I. We decline DCYF's invitation.

In arguing that his failure to comply with the 30-day limit did not deprive the superior court of subject matter jurisdiction, Father relies upon a related line of cases in which we considered statutory time limits for court hearings. See State v. Fournier, 158 N.H. 441 (2009). In that context, we have recognized that not every mandatory time limit imposed by statute is intended to be jurisdictional simply because it is mandatory.

4

In those cases, we have explained that when the legislature has stated that a hearing "shall" be held within a specified period of time, the legislature has imposed a mandatory time limit. Id. at 446. If the legislature has failed to provide an enforcement mechanism for that time limit, we focus upon the goals of the statute and whether the party seeking relief has shown prejudice as a result of the statutory violation in order to determine the proper enforcement mechanism. Id. In doing so, we have distinguished between two types of time limits on court hearings: those that involve a liberty interest and those that involve a general interest in hastening adjudicative dispositions. Id. at 446. We have held that when the legislature "out of liberty concerns, has mandated time limits for holding hearings, . . . personal jurisdiction over a defendant is lost, absent waiver, if the case is not heard within the statutory period." Id. at 447 (quotation omitted). Those time limits are deemed "jurisdictional." See id. at 449. We have held that dismissal is, therefore, required unless the failure to comply with the hearing deadline "is the result of a delay caused by or requested by the prejudiced party, in which case he will be deemed to have waived the time limits." Id. at 453 (quotation and brackets omitted).

For instance, in Fournier, we determined that, where civil commitment of violent sexual predators is considered, mandatory time limits for civil commitment hearings were intended to protect the person's substantial liberty interests and, thus, are jurisdictional in nature. Fournier, 158 N.H. at 446-47, 452-53; see Ruel v. N.H. Real Estate Appraiser Bd., 163 N.H. 34, 42-43 (2011) (describing Fournier); see also In re Russell C., 120 N.H. 260, 267-68 (1980) (holding that statutory time limits for adjudicatory hearings in juvenile delinquency and "children in need of services" proceedings implicate liberty interests and, thus, failure to comply with those limits required court to forfeit personal jurisdiction, unless waived by the juvenile).

By contrast, when "the legislature has prescribed time limits out of a general interest in hastening adjudicative dispositions for the benefit of all parties involved, . . . we have been unwilling to treat the time limit as jurisdictional." Fournier, 158 N.H. at 447; see In re Doe, 126 N.H. at 725 (explaining that, in In re Russell C., when we examined whether statutory mandates to hold adjudicatory hearings under RSA chapters 169-B and 169-D are "jurisdictional," we were referring to jurisdiction over the person). Thus, in Ruel, we decided that two 90-day limits governing the processing by the New Hampshire Real Estate Appraiser Board of a grievance filed against a licensed real estate appraiser are not jurisdictional because they do not implicate a liberty interest. Ruel, 163 N.H. at 36, 41-43. Accordingly, we held that even if the board failed to comply with those statutory time limits, it "retained authority to initiate and carry out disciplinary proceedings" against the appraiser. Id. at 43.

Our decision in Ruel was based, in large part, on our decision in Smith v. New Hampshire Board of Psychologists, 138 N.H. 548 (1994). See Ruel, 163

N.H. at 43.  Smith involved a New Hampshire Board of Examiners of Psychologists proceeding against two psychologists who argued that dismissal of the proceeding was required because the board failed to hold a hearing within the statutory time limit.  Smith, 138 N.H. at 549, 550-51.  There, we assumed that the time limit was mandatory and disagreed with the psychologists that the board's failure to comply with the limit required it to forfeit jurisdiction over them.  Id. at 550-51.  Rather, we evaluated the purpose of the statute and determined that, if the board were to lose personal jurisdiction, the statute's primary purpose would be thwarted.  Id. at 551.  Accordingly, we held that the psychologists were not entitled to dismissal of the proceeding unless, "at a minimum," they met their "burden of showing prejudice due to the delay of the scheduled hearings."  Id.

Father relies, in particular, upon In re Cierra L., 161 N.H. 185 (2010).  In that case, we were asked whether the requirement in RSA 169-C:28, I, that the superior court give priority to an appeal from a final dispositional order is mandatory and, if so, whether the court's failure to comply with the time limit required it to forfeit jurisdiction over the accused parent, and is, thus, "jurisdictional."  In re Cierra L., 161 N.H. at 187-89.  We first observed that the statute "does not delineate a specific time limit," id. at 188, but rather merely requires the superior court to "give an appeal under this chapter priority on the court calendar," RSA 169-C:28, I.  We then assumed that the language did impose a mandatory time limit, and, because the legislature failed to provide a mechanism to enforce this assumed time limit, proceeded to determine whether the proper enforcement mechanism was dismissal of the appeal.  In re Cierra L., 161 N.H. at 188-89.

We examined the purpose of RSA chapter 169-C and observed that nothing in the statute's legislative history indicated "that RSA 169-C:28, I, was enacted to protect the liberty interest of those involved in the adjudication of child abuse and neglect cases."  Id.; cf. In re Russell C., 120 N.H. at 266 (concluding that mandatory time limits on juvenile adjudicatory hearings under RSA chapters 169-B and 169-D are a "legislative pronouncement of a child's right to the expeditious resolution of his alleged delinquency or 'need for services' rooted in his right to due process").  We determined that the mandate that the superior court must "give priority" to appeals from final dispositional orders "was intended to hasten the de novo appeal process in the superior court."  In re Cierra L., 161 N.H. at 188, 189.  Because the respondent in the case did not argue that the superior court's failure to "give priority" to her appeal prejudiced her, we concluded that the court did not err in denying her motion to dismiss.  Id.

Father asserts that because we have "already found that the purpose of the time limits in RSA 169-C:28 [is] to hasten the de novo appeal process[,] . . . the [superior] court had jurisdiction to waive the thirty-day limit prescribed."  In re Cierra L. may be instructive, but it is not dispositive, because in that case

6

and the other cases involving statutory time limits for court hearings, we looked beyond the plain language of the statute to determine whether the legislature intended the statutory time limit to have jurisdictional effect. We take a similar approach in this case, recognizing that while the plain and ordinary meaning of the language in RSA 169-C:28, I, demonstrates that the 30-day appeal period is mandatory, that does not, by itself, answer the question of whether the legislature intended it to be jurisdictional.

We, therefore, examine other provisions in the statutory scheme to discern legislative intent. See Petition of Carrier, 165 N.H. at 721; cf. Smith, 138 N.H. at 551 (examining goals of statute to determine whether forfeiture of personal jurisdiction is the proper mode of enforcing a statutory requirement that an administrative board hold a hearing within a certain deadline). Our examination of those provisions leads us to conclude that the legislature did not intend an appellant's failure to comply with the 30-day deadline to deprive the superior court of subject matter jurisdiction.

The primary purpose of RSA chapter 169-C, also called the Child Protection Act (the Act), is to "provide protection to children whose life, health or welfare is endangered." RSA 169-C:2, I (Supp. 2019); see In re Shelby R., 148 N.H. 237, 241 (2002) (plurality opinion) ("[T]he Act's primary interest is protecting children, which often trumps other competing goals of the Act . . . ."), abrogated on other grounds by In re C.M., 163 N.H. 768 (2012). A "further purpose" of RSA chapter 169-C is "to establish a judicial framework to protect the rights of all parties involved in the adjudication of child abuse or neglect cases." RSA 169-C:2, II (Supp. 2019). Thus, the Act advances two important State interests: (1) protecting children; and (2) protecting the rights of all parties involved in abuse or neglect proceedings. In re Father 2006-360, 155 N.H. 93, 97 (2007).

"The overriding goal of abuse or neglect proceedings is to reunify the family." In re C.M., 163 N.H. at 774; see RSA 169-C:2, III (Supp. 2019). The provisions of RSA chapter 169-C are intended to achieve the purposes of

> keeping a child in contact with his or her home community and in a family environment by preserving the unity of the family and separating the child from his or her parents only when the safety of the child is in danger or when it is clearly necessary for the child's welfare or the interests of the public safety and when it can be clearly shown that a change in custody and control will plainly better the child.

RSA 169-C:2, III(b); see In re C.M., 163 N.H. at 774-75.

The Act

7

seeks to coordinate efforts by state and local authorities, in cooperation with private agencies and organizations, citizens' groups, and concerned individuals, to:
   (a) Protect the safety of the child.
   (b) Take such action as may be necessary to prevent abuse or neglect of children.
   (c) Preserve the unity of the family.
   (d) Provide protection, treatment and rehabilitation, as needed, to children placed in alternative care.
   (e) Provide assistance to parents to deal with and correct problems in order to avoid removal of children from the family.

RSA 169-C:2, II. The chapter is to "be liberally construed to the end that its purpose may be carried out," which includes "provid[ing] effective judicial procedures through which the provisions of this chapter are executed and enforced and which recognize and enforce the constitutional and other rights of the parties and assures them a fair hearing." RSA 169-C:2, III(c). "Thus, under the objectives stated in the statute, the State shares the parents' interest in maintaining the parent-child relationship." In re C.M., 163 N.H. at 777.

The statutory scheme provides that the circuit court's dispositional order is not permanent and is subject to continual review at the circuit court level. See In re Father 2006-360, 155 N.H. at 97; see also RSA 169-C:22 (2014) (allowing circuit court to modify a dispositional order upon a motion alleging changed circumstances), :24 (2014) (requiring periodic review hearings). Even when a final dispositional order is appealed to the superior court, the appeal does not "suspend the order or decision of the [circuit] court unless the [circuit] court so orders." RSA 169-C:28, I; see In re Thomas M., 141 N.H. 55, 60 (1996).

In light of this statutory scheme, we conclude that the legislature did not intend to deprive the superior court of subject matter jurisdiction when an appeal of a final dispositional order is filed after the 30-day period in RSA 169-C:28, I, has passed. To hold otherwise is contrary to the legislature's intent that the provisions of RSA chapter 169-C be construed liberally to effect its purposes. See RSA 169-C:2, III(c). Moreover, while the parties to an abuse or neglect proceeding may have an interest in a speedy disposition, and while that interest might be vindicated if subject matter jurisdiction does not vest in the superior court upon the filing of a late appeal, the primary purposes of the chapter would be thwarted if this were the case. See In re Robyn W., 124 N.H. 377, 381 (1983) (discussing termination of parental rights proceedings); see also Smith, 138 N.H. at 551.

To the extent that the legislature, in other contexts, has an interest in making appeal periods jurisdictional because of an interest in finality, see E. King Poor, The Jurisdictional Time Limit for an Appeal: The Worst Kind of

Deadline – Except for All Others, 102 Nw. U. L. Rev. Colloquy 151, 156 (2008), that interest has little relevance here, where the circuit court's dispositional order is not permanent, and all parties have an interest in ensuring that an erroneous finding of abuse or neglect is corrected. This concern can be seen most clearly when considering the case in which the circuit court erroneously finds that a child has not been abused or neglected, but the appeal is filed one day late. To the extent that the accused parent has any "reliance" interest in the finality of such decision, we are confident that such reliance is not an interest that the legislature intended to protect by depriving the superior court of jurisdiction to even consider allowing a late appeal. Thus, we hold that the failure to comply with the 30-day period set forth in RSA 169-C:28, I, does not deprive the superior court of subject matter jurisdiction. Of course, if the legislature disagrees with our statutory interpretation, it is free to amend the statute, as it sees fit, within constitutional limitations. See State v. Proctor, 171 N.H. 800, 807 (2019).

In this case, the legislature has set forth the purposes of the statute, and we conclude by reading the statutory scheme as a whole, that the legislature did not intend for the appeal period at issue to deprive the superior court of subject matter jurisdiction. However, our prior decisions regarding other statutory appeal periods remain good law.

We are well aware that the consequences of deciding that the failure to comply with a statutory appeal period deprives an appellate tribunal of subject matter jurisdiction can be severe. In Bowles v. Russell, 551 U.S. 205 (2007), for example, the district court granted Bowles' motion to extend the time to appeal and ordered that he file his appeal by February 27. See Bowles, 551 U.S. at 207. Unfortunately for Bowles, the statute in question only authorized the court to extend the time to appeal until February 24. See id. (explaining that the district court gave Bowles seventeen days to file his appeal even though the statute allows district courts to extend the appeal period for only fourteen days); id. at 215 (Souter, J., dissenting). In reliance upon the court order, Bowles filed his appeal on February 26. Id. at 207 (majority opinion). The Supreme Court ruled that the statutory period was jurisdictional and that the courts lacked authority to create an exception. Id. at 213-14. As Justice Souter observed in his dissent, however, "[i]t is intolerable for the judicial system to treat people this way, and there is not even a technical justification for condoning this bait and switch." Id. at 215 (Souter, J., dissenting).

Accordingly, the legislature may want to consider whether statutory appeal periods such as those in RSA chapters 541 and 677 that we have held to affect the appellate tribunal's subject matter jurisdiction should continue to have that effect. In addition, when enacting any future appeal period, the legislature may want to clearly indicate whether the appeal period is intended to be jurisdictional.

9

Father contends that if the appeal period did not deprive the superior court of subject matter jurisdiction, then the court erred by requiring him to prove "good cause." He asserts that the proper inquiry is "whether DCYF [showed] any prejudice as a result of [his] request to file a late appeal." See Appeal of Martino, 138 N.H. 612, 613, 616 (1994) (deciding that the failure of the New Hampshire Compensation Appeals Board to render a decision within thirty days of a hearing, as required by statute, did not require the board to forfeit personal jurisdiction over the claimant, and explaining that because the legislature "failed to provide a method for enforcing [that] statutory mandate," we examine "whether the party seeking relief has shown prejudice"). He argues that, because DCYF did not show prejudice, the superior court erred by denying his motion to file a late appeal. DCYF counters that the superior court correctly declined to waive the appeal period because Father failed to demonstrate "good cause" for his late appeal. DCYF argues that the superior court "reasonably could have found it not reasonable and just to allow Father to file his appeal 62 days past the statutory deadline."

Because the appeal period in this case is mandated by statute, the legislature has the authority to determine how to enforce the mandate and the circumstances under which it may be waived, if any. In this case, despite the lack of legislative direction, we need not decide whether the statutory appeal period is enforced only if DCYF shows prejudice or whether it is waived only if Father demonstrates "good cause," because Father prevails under either standard. DCYF did not argue in the superior court that Father's failure to comply with the 30-day appeal period caused it any prejudice, nor did the superior court make any such finding. As for "good cause," we hold that there was "good cause" to grant Father's motion for leave to file his late appeal as a matter of law.

Whether "good cause" exists in this context is a question of fact. See Jaques v. Chandler, 73 N.H. 376, 381 (1905). Ordinarily, we defer to the trial court's factual findings, and will uphold them unless they lack evidentiary support or are legally erroneous. See Vention Med. Advanced Components v. Pappas, 171 N.H. 13, 28 (2018). However, because the superior court in this case relied only upon a paper record and we have before us the same paper record, "we give less than ordinary deference to the trial court's factual findings." Lawrence v. Philip Morris USA, 164 N.H. 93, 96-97 (2012) (quotation and ellipsis omitted).

As we have explained in other related contexts, "good cause" is a broader standard than a standard requiring proof of "accident, mistake or misfortune and not neglect." Perron v. Aranosian, 128 N.H. 92, 94-95 (1986) (quotations and ellipses omitted); see Donnelly v. Eastman, 149 N.H. 631, 633 (2003). While the standard requiring proof of accident, mistake or misfortune and not neglect bars relief "from all consequences of human neglect," the good cause

10

standard does not.  <u>Perron</u>, 128 N.H. at 95.  Good cause is equivalent to what is "reasonable and just."  <u>Jaques</u>, 73 N.H. at 381.

In the instant case, we hold, as a matter of law, that it was "reasonable and just" to grant Father's motion to file his appeal late.  Father filed his partially-assented-to motion to file a late appeal on April 17, 2019, before the parties had ever appeared in the superior court.  Father did not file his appeal earlier because his attorney was on maternity leave when the dispositional order was entered, and "[t]here was a misunderstanding between father and [his] counsel's office regarding the filing of the appeal."  The attorney for the child[2] and the attorney for Mother assented to Father's motion.  According to the superior court, the parties prefer that Father's and Mother's cases "be tried together."  Under these circumstances, we conclude that there was good cause, as a matter of law, to grant Father's motion to file a late appeal.

<u>Reversed and remanded</u>.

HICKS, BASSETT, and DONOVAN, JJ., concurred.

---

[2] As noted above, the Act's primary interest is protecting children, <u>Shelby R.</u>, 148 N.H. at 241, and, therefore, determining whether it is "reasonable and just" to allow a late appeal must be done in light of that interest.  It is significant, therefore, that in this case, the child, through her attorney, assented to Father's motion for late entry of the appeal.

11