Derry Family Division
No. 2007-844

IN THE MATTER OF KEVIN GENDRON AND JODY PLAISTEK

Argued: April 10, 2008
Opinion Issued: May 20, 2008

*Phillips, Gerstein & Channen, LLP*, of Haverhill, Massachusetts (*Lynne A. Saben* on the brief and orally), for the petitioner.

*Basbanes & Chenelle*, of Groton, Massachusetts (*Kevin A. Chenelle* on the brief and orally), for the respondent.

DUGGAN, J. The petitioner and putative father, Kevin Gendron, brings this interlocutory appeal from a ruling of the Derry Family Division (*Sadler*, J.) ordering him to submit to genetic marker testing. *See* RSA 522:1 (2007). We reverse and remand.

The following facts are taken from the interlocutory appeal statement and its appendices. The respondent-mother, Jody Plaistek, gave birth to a child on December 28, 2004, in Lawrence, Massachusetts. At the time of the child's birth, the parties were not married, but resided together in Derry, New Hampshire. The child has the father's last name.

Two days after the child's birth, both parties signed his birth certificate. They also signed a Voluntary Acknowledgement of Parentage (acknowledgement), in which they "acknowledge[d] that [they] are the biological parents of" the child. The acknowledgement specifically names Kevin Gendron as the child's father. Both parties affirmed that they

"voluntarily sign[ed] th[e] acknowledgment to establish the child's paternity." In so doing, they "underst[oo]d that th[e] acknowledgement w[ould] be filed with the child's birth certificate[;] the names of both par[ties] w[ould] be on the child's birth certificate"; and the acknowledgment constituted "a legal document with the same binding effect as a court judgment of paternity." The parties further indicated that they understood "the process for rescinding (canceling) th[e] acknowledgement of paternity." Pursuant to Massachusetts law, the birth certificate and acknowledgement were subsequently filed in Lawrence City Hall. *See* Mass. Gen. Laws ch. 209C, §§ 2, 11(a) (2007).

The parties lived together until June 2007. At that time, the father obtained a domestic violence order against the mother. He also filed a parenting petition seeking custody of the child. In response, the mother asserted that the father is not the child's biological father, and requested that the court order DNA testing to establish paternity. The mother, however, did not dispute that the child has developed a paternal relationship with the father.

On August 31, 2007, the court held a temporary hearing on the parenting petition. At the hearing, the father submitted the child's birth certificate, but not the acknowledgement. The father later located the acknowledgment, and, on September 6, 2007, submitted it to the court in a post-hearing motion. On September 17, 2007, the trial court ordered the father to submit to genetic marker testing.

On September 27, 2007, the father moved for reconsideration. He argued that paternity was established in Massachusetts when the parties signed and filed the acknowledgement, and that New Hampshire was required to give full faith and credit to that determination of paternity. *See* RSA 168-A:2, II (Supp. 2007). On October 3, 2007, the trial court denied the father's post-hearing motion to accept the acknowledgement because "[p]aternity testing [had] already [been] ordered." On October 31, 2007, the trial court denied the father's motion for reconsideration, explaining:

> While the court finds that the [acknowledgement] must be given some weight, the court finds that the purpose of the Parenting statute must also be given weight. The purpose of the statute, NH RSA 461-A is about the best interests of the child. The best interest of [the child] is to have this matter resolved as quickly as possible so the parties can try to move forward whatever the results might be. [The child] is the one who deserves closure on this issue. He needs to know who his parents are and not be plagued with the lingering issue between [the parties] which will inevitably be an undercurrent of their relationship for years to come.

On appeal, the father argues that paternity was established in Massachusetts, and that New Hampshire must afford full faith and credit to that determination. He asserts that the doctrine of res judicata now bars the mother from challenging paternity. Alternatively, the father contends that the mother should be equitably estopped from contesting paternity.

The mother first argues that we cannot consider the acknowledgement because the father did not submit it at the temporary hearing and the trial court did not allow its late submission. Second, assuming the acknowledgement is part of the record, the mother claims that its signing did not produce a final judgment, but created only a rebuttable presumption of paternity, and that New Hampshire law applies in determining whether and to what extent that presumption may be challenged. The mother asserts that she may challenge that presumption pursuant to RSA 5-C:28, III (Supp. 2007), which allows a court of competent jurisdiction to decide, after the sixty-day statutory rescission period, a challenge to an affidavit of paternity filed in New Hampshire. *See also* RSA 5-C:24 (Supp. 2007). Thus, because she challenged the acknowledgement and, specifically, whether the father is the child's natural father, the mother maintains that the trial court properly ordered genetic marker testing.

■ We first reject the mother's contention that the acknowledgement is not part of the record. Although the trial court initially denied the father's post-hearing motion to accept the acknowledgement, in ruling upon the father's later motion for reconsideration, the trial court not only considered the acknowledgement, but gave it "some weight." Accordingly, we will consider the acknowledgment in resolving this appeal. *See* SUP. CT. R. 13 (explaining that the record on appeal shall include all "papers and exhibits filed and *considered* in the proceedings in the trial court" (emphasis added)).

We now address whether the trial court properly ordered genetic marker testing. Resolution of this issue requires us to apply RSA 168-A:2 and RSA 522:1. The application of a statute presents a question of law, which we review *de novo. ElderTrust of Fla. v. Town of Epsom*, 154 N.H. 693, 696 (2007).

RSA 168-A:2, II provides: "The courts of this state *shall* give full faith and credit to a determination of paternity made by another state, whether established by court or administrative order, *through voluntary acknowledgement of paternity*, or by operation of another state's law." (Emphases added.) If paternity has been established in that manner, the father's liabilities, including necessary support, may be enforced. RSA 168-A:2, III.

Here, both parties voluntarily signed the acknowledgement within days of the child's birth. Under Massachusetts law,

> Unless either signatory rescinds the acknowledgement within 60 days of the date of signing . . . , the acknowledgment *shall establish paternity* as of the date it has been signed by such putative father and mother and shall have the same force and effect as a *judgment of paternity*, subject to challenge *within one year* only on the basis of fraud, duress or material mistake of fact . . . .

Mass. Gen. Laws ch. 209C, § 11(a) (emphases added). To rescind the acknowledgment, a party must, "within 60 days of signing the acknowledgment, file a petition in the probate and family court in the county in which the child and one of the parents resides," but "[i]f neither of the parents lives in the same county as the child, then such complaint shall be filed in the county where the child lives." *Id.*; *cf. R.L.H. v. T.E.L.*, 514 N.E.2d 855, 855-56 (Mass. 1987) (interpreting similar statutory language in same chapter as pertaining to venue, not jurisdiction).

If the acknowledgement has not been challenged in accordance with the foregoing provisions, "no judicial proceeding shall be required or *permitted* to ratify [the] acknowledgement," and the acknowledgement *"shall* be recognized as a sufficient basis for seeking an order of support, visitation or custody with respect to the child *without further proceedings to establish paternity."* Mass. Gen. Laws ch. 209C, § 11(a) (emphases added). The Massachusetts legislature's "clear intention [in enacting this statute was] to limit the ability of a voluntary signatory to a paternity agreement to challenge the validity of that agreement at some later time." *Paternity of Cheryl*, 746 N.E.2d 488, 500 (Mass. 2001).

By signing the acknowledgement, the mother, by her own volition, accepted that the father is the child's *biological* father. Even though she presumably had notice that genetic marker testing was available, *see* Mass. Gen. Laws ch. 209C, § 5(b) (2007), she did not seek such testing before signing the acknowledgement. The mother further affirmed that she read and understood the process for rescinding and challenging the acknowledgement. Despite this understanding, the mother never rescinded nor challenged the acknowledgment within the delineated time periods. Accordingly, the father's paternity was established on December 30, 2004, and, as the mother understood when she signed it, the acknowledgment now has the same force and effect as a Massachusetts court judgment of paternity. Mass. Gen. Laws ch. 209C, § 11(a); *see also* 41 AM. JUR. 2D *Illegitimate Children* § 42, at 261 (2005) ("A valid acknowledgement of

paternity filed with the proper agency is equivalent to an adjudication of paternity of a child and confers upon the acknowledged father all of the rights and duties of a parent.").

█ Besides her assertion two and one-half years after the child's birth that the father is not the child's biological father, the mother alleges no facts challenging the validity of the acknowledgement itself. *Compare* RSA 5-C:28, III (Supp. 2007) *and Ely v. DeRosier*, 123 N.H. 249, 251 (1983), *with* Mass. Gen. Laws ch. 209C, § 11(a) *and* 41 AM. JUR. 2D, *supra* § 42. Pursuant to RSA 168-A:2, II, we must give the acknowledgement "the same credit, validity and effect" it has in Massachusetts, *Wilson v. Shepard*, 124 N.H. 392, 394 (1983) (quotation omitted). Contrary to the mother's assertion, the acknowledgement did not create a presumption of paternity in Massachusetts, but, rather, *established* paternity. *Compare* Mass. Gen. Laws ch. 209C, § 11(a) ("acknowledgement shall establish paternity") *with* Mass. Gen. Laws ch. 209C, § 6(a) (setting forth circumstances in which a man is presumed to be the father of a child, and not including instance where an acknowledgement of parentage has been signed and filed). Accordingly, giving the acknowledgement full faith and credit, we conclude that paternity has been established in this case.

For the first time at oral argument, the mother contended that she was precluded from rescinding the acknowledgement within the statutory sixty-day time period because Massachusetts law requires a petition for rescission to be filed in the probate and family court in the county where the child lives. *See* Mass. Gen. Laws ch. 209C, § 11(a). She asserted that, had she petitioned for rescission in Massachusetts, a Massachusetts court would have rejected her petition for lack of jurisdiction because the child has always resided in New Hampshire, not Massachusetts. Thus, the mother argued that it would be fundamentally unfair for us to give the acknowledgement full faith and credit when Massachusetts provided her with no opportunity to rescind the acknowledgment.

█ The mother did not present this argument in her brief. She also never asserted it to the trial court, and the trial court did not consider it in reaching its decision. We generally decline to address issues raised for the first time during oral argument, *see, e.g., Petition of Beauregard*, 151 N.H. 445, 449 (2004) (declining to reach the merits of an argument raised by the appellee for first time at oral argument); *State v. Scovill*, 144 N.H. 409, 414 (1999) (declining to reach merits of State's harmless error argument raised for first time at oral argument); *cf. Panas v. Harakis & K-Mart Corp.*, 129 N.H. 591, 617-18 (1987) (court will not address an issue raised for the first time on appeal in a reply brief), because, otherwise "a party [could] wait until oral argument and then surprise opposing counsel with a new issue

not previously addressed in that party's brief," *Scovill*, 144 N.H. at 414. "There is a fundamental unfairness in not adequately and fully presenting one's position in the brief and waiting until oral argument to clarify it." *State v. Tucker*, 145 N.H. 723, 725 (2001) (quotation omitted). Thus, "all of the substantive arguments known to the parties should appear at least once in the briefs so that the parties and the court may be prepared to fully discuss them during the oral presentation of the case." *Id.* at 726. Here, because the mother raised this new substantive question for the first time at oral argument, we do not reach the merits of this argument.

Under RSA 522:1, I(a), a "court may order genetic paternity testing upon the motion of any party or upon its own initiative." However, the mother, child, and putative father are required to submit to such testing only in civil actions "in which paternity is a contested and *relevant* issue." RSA 522:1, I (emphasis added).

Here, the unchallenged acknowledgement established the father's paternity, thus dispensing with the need for additional proof of paternity. Therefore, genetic marker testing was irrelevant to determining the father's request for custody. *See id.* Indeed, we reached a similar result in *Watts v. Watts*, 115 N.H. 186 (1975). There, the defendant father had acknowledged two children as his own since their birth. *Watts*, 115 N.H. at 187. Over fifteen years later, relying upon an earlier version of RSA 522:1, the defendant sought to disprove paternity through blood tests. *Id.* at 188; *see* RSA 522:1 (1974). We held that the presumption of paternity in that case could not be rebutted by blood tests because the "defendant ha[d] acknowledged the children as his own without challenge for over fifteen years." *Watts*, 115 N.H. at 189. We reasoned that "[t]o allow [the] defendant to escape liability for support by using blood tests would be to ignore his lengthy, voluntary acceptance of parental responsibilities." *Id.*; *see also McRae v. McRae*, 115 N.H. 353, 355 (1975) ("To permit the husband to raise the question of paternity after an eight-year period of uninterrupted acquiescence, with several opportunities to raise the issue, would contravene the policy of this State's law to protect the child and the spouse from the belated resort to scientific proof in an effort to escape parental responsibility." (citation omitted)).

■ Although it is the mother who is attempting to disprove the father's paternity in this instance, the mother has proffered, and we see, no reason for reaching a different result. Whether the mother or father is the petitioner, the paramount interests are certainty and finality. *Cf. In re Baby Girl P.*, 147 N.H. 772, 776 (2002). Thus, whether genetic marker testing should be ordered does not depend upon the party seeking to reopen

paternity, but depends instead upon whether genetic marker testing is "contested and relevant." RSA 522:1, I.

■ The trial court apparently found that genetic marker testing was relevant because it would be in the child's best interests. While we agree that a child's best interests generally should be given consideration in determining whether to order genetic marker testing when that issue remains relevant, *cf. Bodwell v. Brooks*, 141 N.H. 508, 512 (1996); *Hansen v. Hansen*, 116 N.H. 329, 331 (1976), we find that the trial court erred in finding that this child's best interests required such testing. Certainty and finality are particularly important in paternity determinations because "stability and continuity of support, both emotional and financial, are essential to a child's welfare." *Paternity of Cheryl*, 746 N.E.2d at 495 (citations omitted); *see also Tregoning v. Wiltschek*, 782 A.2d 1001, 1004 (Pa. Super. Ct. 2001) ("Public policy demands that children have the right to certainty in their relationships with their parents. . . . If a certain person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father he has known all his life is not in fact his father." (citations omitted)).

■ In this case, the acknowledgement established the father as the child's legal father. Accordingly, the trial court erred in ordering genetic marker testing. *Cf. Watts*, 115 N.H. at 188-89; *Tregoning*, 782 A.2d at 1004; *Pettinato v. Pettinato*, 582 A.2d 909, 913 (R.I. 1990). Because we find that the acknowledgement must be afforded full faith and credit, we do not reach the father's estoppel argument.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.