Hillsborough-northern judicial district
No. 2008-616

THE STATE OF NEW HAMPSHIRE

v.

RAYMOND K. FOURNIER

Argued: January 15, 2009
Opinion Issued: March 19, 2009

442

*Kelly A. Ayotte*, attorney general (*Glenn A. Perlow*, assistant attorney general, on the memorandum of law and orally), for the State.

*Lisa L. Wolford*, public defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. This is an interlocutory appeal from an order of the Superior Court (*Barry*, J.) denying the defendant, Raymond Fournier's, motion to dismiss the petition for his involuntary civil commitment as a sexually violent predator. *See* SUP. CT. R. 8. We vacate and remand.

This is the second interlocutory transfer stemming from the State's petition to have the defendant found a sexually violent predator. *State v. Fournier*, 158 N.H. 214 (2009). For purposes of this appeal, we take the facts as presented in the interlocutory transfer statement and its appendices. *In the Matter of Gendron & Plaistek*, 157 N.H. 314, 315 (2008). On March 17, 1994, the defendant pled guilty to seven counts of aggravated felonious sexual assault. He was sentenced to five to fifteen years in the New Hampshire State Prison, and was due to be released on June 16, 2008.

Because the defendant had been convicted of a sexually violent offense, he is eligible to be involuntarily committed as a sexually violent predator pursuant to RSA chapter 135-E (Supp. 2008). Under this chapter, a sexually violent predator is defined as a person who has been convicted of a sexually violent offense, "[s]uffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment," and is not eligible for involuntary admission under RSA chapter 135-C or RSA chapter 171-B. RSA 135-E:2, XII.

A person found to be a sexually violent predator is involuntarily committed and held at the secure psychiatric unit at the New Hampshire State Prison for a period of up to five years following the expiration of his incarcerative sentence. RSA 135-E:11, II. The State may petition to renew the committal order for an additional period of up to five years. RSA 135-E:12. The statute places no limitation on the number of times the State may petition to renew the committal order or the amount of time a person may be involuntarily committed. This chapter, passed in 2006 and effective January 1, 2008, "applies retroactively to all persons in custody as of the effective date of this statute who have been convicted of a sexually violent offense, as well as prospectively." RSA 135-E:19.

Pursuant to RSA 135-E:3, II,

> [w]hen a person who has committed a sexually violent offense is to be released from total confinement in New Hampshire, the agency

with jurisdiction over the person shall give written notice to the county attorney of the county where that person was last convicted of a sexually violent offense, or attorney general if the case was prosecuted by the attorney general.

This written notice must be provided at least nine months prior to either the person's anticipated release, or any hearing regarding the person's possible release. RSA 135-E:3, II. The county attorney or attorney general may then request that the multidisciplinary team (MDT), established by the department of health and human services and consisting of licensed psychiatrists or psychologists, *see* RSA 135-E:3, I, "assess and evaluate the person to determine whether the person is a sexually violent predator." RSA 135-E:3, III. The MDT's assessment and evaluation includes review of the person's institutional history and treatment record, including mental health and medical records, the person's criminal background, and "any other factor that is relevant to the determination of whether such person is a sexually violent predator." RSA 135-E:3, V. The MDT must provide a written report as to its findings within six months of receiving notice of the person's anticipated release. RSA 135-E:3, V (c).

If the MDT finds that a person meets the statutory definition of a sexually violent predator, the county attorney or attorney general has fourteen days within which to file a petition with the superior court "alleging that the person is a sexually violent predator and stating facts sufficient to support such allegation." RSA 135-E:6. Once a petition is filed, the superior court has ten days to make an initial finding of probable cause. RSA 135-E:7, I. Within sixty days of this determination, or if a jury trial is elected, within sixty days of that election, the court shall hold a trial to determine if the person is a sexually violent predator. RSA 135-E:9, II. The State carries the burden of proving, by clear and convincing evidence, that the person is a sexually violent predator. RSA 135-E:11, I. The rules of evidence, the doctor-patient privilege under RSA 329:26, privileged communications under RSA 330-A:32, and other similar statutes or rules, do not apply at trial. RSA 135-E:10, I. However, any report by the MDT is inadmissible, as is hearsay evidence unless it falls within one of the recognized exceptions to the hearsay rule. RSA 135-E:10, III, IV.

A person committed as a sexually violent predator may file a petition for discharge at any time after his commitment. RSA 135-E:14. The court may require that the county attorney or attorney general respond to the petition. *Id.* It may also deny the petition without a hearing, if it determines the petition is without merit on its face. *Id.*

Consistent with the terms of RSA 135-E:3 and at the request of the State, in January 2008, an MDT team was assembled to evaluate whether

the defendant met the definition of a sexually violent predator. On March 7, 2008, the MDT concluded that the defendant met that definition. Ten days later, on March 17, 2008, the State petitioned the trial court to certify the defendant as a sexually violent predator pursuant to RSA chapter 135-E. The State requested that the trial court, "[w]ithin 10 days, find probable cause based on the contents of the foregoing Petition that [the defendant] is a Sexually Violent Predator" and also schedule a trial within 60 days. *See* RSA 135-E:7, I, :9, II. The trial court made an initial finding of probable cause on April 28, 2008. It does not appear that a trial on the merits was scheduled at that time.

Because no hearing was scheduled to occur before the defendant's incarcerative sentence expired on June 16, 2008, the State requested an emergency probable cause hearing, which was held on June 16. *See* RSA 135-E:7, II. At that time, the defendant moved to dismiss the petition, arguing that the trial court no longer had jurisdiction to hear the matter because it had failed to comply with the statutory time limits; namely, that there had not been a probable cause determination within ten days of the filing of the petition, or a trial on the merits within sixty days of the request for trial. In its July 3, 2008 order, the trial court concluded that the ten-day time limit set forth in RSA 135-E:7, I, and the sixty-day time limit set forth in RSA 135-E:9, II are mandatory and had not been complied with in this case. It also concluded that "these time limits guarantee that the Court will reach the merits of the petition either before or shortly after the person's incarcerative sentence expires and thereby protect his liberty interests" and, thus, "the legislature mandated these time limits out of liberty interest concerns." However, despite this finding, the trial court ultimately denied the defendant's motion to dismiss because it found that the defendant had not been prejudiced by the delays. The trial court subsequently found probable cause to continue the defendant's detention, and, on July 10, 2008, scheduled a trial on the merits for September 2, 2008. The defendant's motion for reconsideration was denied on July 30, 2008.

On August 13, 2008, the trial court approved the following question for interlocutory appeal: "Does the court's failure to comply with mandatory time limits divest the court of authority to act in Mr. Fournier's case, thereby requiring the dismissal of the petition against him?"

Because this presents a question of statutory interpretation, our review is *de novo. In re Juvenile 2007-150*, 156 N.H. 800, 801 (2008). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *State v. Gubitosi*, 157 N.H. 720, 723 (2008). We first examine the language of the statute, and, where possible, we apply the plain and ordinary

meanings to the words used. *Id.* at 723-24. We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. *Id.* at 724.

RSA 135-E:7, I, provides:

> When the county attorney or attorney general files a petition seeking to have a person declared a sexually violent predator, within 10 days of the filing of the petition, the court *shall* determine whether probable cause exists to believe that the person named in the petition is a sexually violent predator. If the court determines based on the content of the petition that there is probable cause to believe that the person is a sexually violent predator, the court shall order that the person remain in custody and be held in an appropriate secure facility for further proceedings in accordance with this chapter.

(Emphasis added.) RSA 135-E:9, II provides: "Within 60 days after the court's initial determination of probable cause, or, in cases where a jury trial has been elected, 60 days after the election of a jury trial, the court *shall* conduct a trial to determine whether the person is a sexually violent predator." (Emphasis added.)

█ The use of the word "shall" is generally regarded as a command. *McCarthy v. Wheeler*, 152 N.H. 643, 645 (2005). Although not controlling, it is significant as indicating that the legislature intended the statute to be mandatory. *In re Russell C.*, 120 N.H. 260, 264 (1980). "This is especially so where the purpose of the statute is to protect private rights." *Id.*

█ The State concedes that the time limits set forth in RSA 135-E:7, I, and RSA 135-E:9, II are mandatory. The State further concedes that "the liberty interests of a person against whom the State has filed a petition under the Act are substantial, and that the Legislature certainly considered them when enacting the time limits at issue." However, it asserts that neither time limit was intended to be jurisdictional because such an interpretation would thwart the primary purpose of the Act. We disagree.

█ Where the legislature has not provided how its mandatory time limits are to be enforced, we must determine the appropriate mode of enforcement. *McCarthy*, 152 N.H. at 645. Our inquiry focuses upon two factors: consideration of the statutory goals and whether the party seeking relief has shown prejudice as a result of the statutory violation. *Id.*

█ When interpreting the goals of a statute, we have distinguished between two types of time limits: those involving a liberty interest and those involving "a general interest in hastening adjudicative dispositions."

*Appeal of Martino*, 138 N.H. 612, 615-16 (1994). "Where the legislature, out of liberty interest concerns, has mandated time limits for holding hearings, we have held that personal jurisdiction over a defendant is lost, absent waiver, if the case is not heard within the statutory period." *Id.* at 615. "Where the legislature has prescribed time limits out of a general interest in hastening adjudicative dispositions for the benefit of all parties involved, however, we have been unwilling to treat the time limit as jurisdictional." *Id.* at 616.

In *Russell C.*, we considered RSA 169-B:14, II (Supp. 1979) and RSA 169-D:13, II (Supp. 1979), which establish the statutory time limits for the adjudication of a juvenile as a "delinquent" or "child in need of services." *Russell C.*, 120 N.H. at 263. We concluded that "[t]he prescription of mandatory time limits on juvenile adjudicatory hearings under [these statutes] is a legislative pronouncement of a child's right to the expeditious resolution of his alleged delinquency or 'need for services' rooted in his right to due process." *Id.* at 266. We further held that these time limits "effectuate a substantive right requiring the court to forfeit jurisdiction if not complied with, unless such noncompliance is the result of a delay caused or requested by the juvenile, in which case he will be deemed to have waived the time limits." *Id.* at 268. In making this determination, we recognized that "it is the juvenile's liberty interest that triggers the need for due process safeguards." *Id.*

Similarly, in *McCarthy*, we analyzed RSA 173-B:4, I (2002) and RSA 173-B:3, VII (2002), which require that certain hearings occur within a specified period of time after the filing of a domestic violence petition. *McCarthy*, 152 N.H. at 644-45. We again concluded that the statutory time frames were intended to protect a defendant's liberty interests, noting, "It hardly bears mentioning that a restraining order restrains one's liberty." *Id.* at 646. As such, the violation of these time frames, absent waiver by the defendant, required that the domestic violence petition be dismissed. *Id.*

■ The express purpose of RSA chapter 135-E is to "create a civil commitment procedure for the long-term care and treatment of sexually violent predators." RSA 135-E:1. It is evident that the legislature intended this chapter to protect the public from sexually violent predators. However, its plain language also demonstrates a concurrent legislative intent to protect the liberty interests of the person who is subject to such involuntary commitment.

■ A plain reading of the language of the entire chapter indicates that the legislature intended these proceedings to be completed prior to the expiration of the subject's incarcerative sentence, thus limiting any possible unnecessary infringement on a person's liberty. The legislature specifically

enumerated time constraints at each stage of the commitment process, including, in addition to those at issue here, requiring that the process begin with notice to the appropriate prosecuting authority "[a]t least 9 months prior to" the person's anticipated release, RSA 135-E:3, II (a), (b), and providing that the multidisciplinary team complete its written report within six months of receiving notice of a person's anticipated release, RSA 135-E:3, V (c). These and other time limits within the chapter would be rendered meaningless if the process were intended to be drawn out beyond the person's incarcerative sentence, as there would be no need to begin the process nine months in advance of the person's anticipated release, or to maintain such an expedited procedure leading up to trial.

Further evidence of the legislature's intent to have this process completed prior to the end of a defendant's original sentence is demonstrated by its enumeration of an "emergency" provision "[i]n the event that a person who has been convicted of a sexually violent offense is eligible for immediate release from total confinement." RSA 135-E:4, I. This provision provides an accelerated procedure that temporarily detains the person subject to release and allows the county attorney or attorney general to file a petition for an emergency hearing to determine if the person is a sexually violent predator. *Id.* Under the statute, an initial probable cause hearing must be held within twenty-four hours of the filing of a petition for an emergency hearing, excluding weekends and holidays, during which the person remains in total confinement. *Id.* If the court determines that there is probable cause to believe the person is a sexually violent predator, the MDT must, within seventy-two hours, assess the person, and, if it determines the person meets the statutory definition of a sexually violent predator, provide a written report and recommendation to the county attorney or attorney general. RSA 135-E:4, II. The prosecuting attorney then has forty-eight hours to file a petition alleging that the person is a sexually violent predator and stating facts sufficient to support such allegation. RSA 135-E:4, III. If either the MDT or the prosecuting attorney fails to comply with these time limits, the person is released. RSA 135-E:4, IV.

The legislature's emphasis on time limits in the administration of this emergency procedure again illustrates its overriding concern for the expeditious resolution of a petition under this chapter and limiting the unnecessary infringement on a person's liberty. Further, the legislature's use of the term "emergency" indicates that such an expedited procedure should not be necessary in the normal application of this statute.

■■ In addition to the legislature's clear intent to have these matters completed prior to the expiration of the person's incarcerative sentence, we

note that the legislature has explicitly stated that the time limits associated with the emergency provision are not jurisdictional. RSA 135-E:4, IV. The plain language of this provision demonstrates that the legislature has recognized a distinction between time frames that are jurisdictional, and those that are not. RSA 135-E:4, IV provides, in pertinent part:

> The provisions of this section . . . are not jurisdictional, and failure to comply with the time limitations, which results in the release of a person who has been convicted of a sexually violent offense, is not dispositive of the case and does not prevent the county attorney or attorney general from filing a petition against a person otherwise subject to the provisions of this chapter.

It is a well-established canon of statutory construction that the expression of one thing in a statute normally implies the exclusion of another. *St. Joseph Hosp. of Nashua v. Rizzo*, 141 N.H. 9, 11-12 (1996). Furthermore, in construing a statute, we will neither consider what the legislature might have said nor add words that it did not see fit to include. *In the Matter of Martel & Martel*, 157 N.H. 53, 58 (2008). Thus, the fact that the legislature stated only that the time frames in RSA 135-E:4 are not jurisdictional is significant evidence of its intent that the time limits set forth in RSA 135-E:7, I, and RSA 135-E:9, II are jurisdictional.

Further, it is also significant that a failure to comply with the non-jurisdictional time limits established in RSA 135-E:4 results in the person's release, but "is not dispositive of the case." RSA 135-E:4, IV. Through this language, the legislature has implicitly recognized that, where the time limits are jurisdictional, a failure to comply would result in dismissal of the petition.

██ ██ The United States Supreme Court has recognized that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). As in *McCarthy* and *Russell C.*, we find that the mandatory time frames established in RSA 135-E:7, I, and RSA 135-E:9, II are a legislative pronouncement of a person's right to have the petition against him expeditiously resolved, rooted in his right to due process, and that they were intended to protect the person's substantial liberty interests. Furthermore, violation of these time limits is itself prejudicial to the due process rights of a person subject to involuntary commitment under this statute. *See McCarthy*, 152 N.H. at 646. The time limits are therefore jurisdictional in nature.

The Supreme Court of Kansas has reached the same conclusion with respect to the time limits included in its Sexually Violent Predator Act. *See*

*In re Searcy*, 49 P.3d 1, 10 (Kan. 2002). In that case, after being found a sexually violent predator, Searcy appealed to the Supreme Court of Kansas, arguing that the district court lacked jurisdiction because he had not been brought to trial within the mandatory time period set forth in the Kansas Sexually Violent Predator Act. *Id.* at 2. The applicable Kansas statute provided, in pertinent part: "Within 60 days after the completion of any [probable cause] hearing . . . , the court shall conduct a trial to determine whether the person is a sexually violent predator." Kan. Stat. Ann. § 59-29a06 (Supp. 2001); *see also Searcy*, 49 P.3d at 4. As in this case, the State argued that this time limit was not jurisdictional, and, even if it was, Searcy had waived the requirement. *Searcy*, 49 P.3d at 4. The Kansas Supreme Court, treating this as a question of subject matter jurisdiction, recognized, "If jurisdictional, failure to bring a respondent to trial within 60 days of the probable cause determination would deprive the court of jurisdiction and require the court to dismiss the action." *Id.* at 5.

The court found that "[s]trict compliance with the 60-day period . . . is essential to the preservation of the rights of those against whom a petition has been filed and a probable cause finding has been made." *Id.* at 6. In arriving at the decision that the 60-day time limit was in fact jurisdictional, the court relied upon the legislature's explicit determination that certain time limits under the statute were not jurisdictional, and its failure to make the same determination with respect to the 60-day time period. *Id.* It further recognized that this language is analogous to the statutory right to speedy trial in criminal cases, and found noteworthy the numerous other procedural protections afforded to a respondent under the Act, such as the right to a jury trial and counsel. *Id.* at 8-9. This statute has since been amended to explicitly state that the 60-day time limit is not jurisdictional. *See In re Hunt*, 82 P.3d 861, 870 (Kan. Ct. App. 2004).

We recognize that other states have held that comparable time frames are mandatory, but not jurisdictional. *See, e.g., State v. Goode*, 830 So. 2d 817, 828 (Fla. 2002) (per curiam); *In re Care and Treatment of Donaldson*, 214 S.W.3d 331, 333 (Mo. 2007) (en banc); *In re Matthews*, 550 S.E.2d 311, 314-15 (S.C. 2001), *cert. denied*, 535 U.S. 1062 (2002). However, the analytical framework in those cases does not distinguish between time frames that are intended to protect a liberty interest, and those that are prescribed "out of a general interest in hastening adjudicative dispositions." *Martino*, 138 N.H. at 616. Further, we note that, despite finding that these time frames are not jurisdictional, at least some courts have concluded that dismissal for failing to comply is still the appropriate remedy. *See Goode*, 830 So. 2d at 830; *Matthews*, 550 S.E.2d at 314. In *Goode*, the trial court dismissed the action for involuntary commitment because Goode had not been brought to trial within the statutory thirty-day

time period. *Goode*, 830 So. 2d at 818. The Florida Supreme Court affirmed the dismissal, holding, "based on the importance of the obvious liberty rights at stake, and consistent with the Kansas act upon which Florida's law is modeled, we agree that the Legislature intended that there should be 'scrupulous compliance' with the statutory thirty-day time limit." *Id.* at 826. Similarly, in *Matthews*, the Supreme Court of South Carolina held: "When the sixty day period [of time to hold a trial] has passed, and no continuance has been granted, the proper procedure for a respondent to follow is to file a motion to dismiss." *Matthews*, 550 S.E.2d at 314.

The State argues that, rather than following our holdings in *McCarthy* and *Russell C.*, we must consider RSA chapter 135-E in light of our holdings in *Smith v. New Hampshire Board of Psychologists*, 138 N.H. 548 (1994), *In re Robyn W.*, 124 N.H. 377 (1983), and *Appeal of Martino*, 138 N.H. 612 (1994). In each of those cases we declined to find a statutory time limit jurisdictional, concluding that such a finding would, respectively, thwart the primary purpose of the statute, be "illogical," or be unintended by the legislature. *Smith*, 138 N.H. at 551; *Robyn W.*, 124 N.H. at 381; *Martino*, 138 N.H. at 616. However, these cases are inapposite, as none of the respective statutes involved a liberty interest. The statute at issue in *Smith* involved the failure of the New Hampshire Board of Examiners of Psychologists to hold a hearing within the statutorily required three months of the date of notice on a written complaint. *Smith*, 138 N.H. at 550. The statute in *Robyn W.* involved a court's noncompliance with the mandatory sixty-day time limit for the issuance of a decision in a parental rights termination proceeding. *Robyn W.*, 124 N.H. at 380-81. Similarly, the statute at issue in *Martino* involved a New Hampshire Compensation Appeals Board decision that was not issued within the statutorily required thirty days following a hearing. *Martino*, 138 N.H. at 615. Indeed, in *Martino* we clearly stated that there was nothing in the language or legislative history of the statute at issue "to indicate it was designed to cure liberty interest concerns." *Id.* at 616. While these cases all involve important interests, none involve the loss of liberty, and, thus, these statutes do not deprive the trial court of jurisdiction when there has been noncompliance with the enumerated time limit.

Our conclusion is also consistent with our decision in *In re Christopher K.*, 155 N.H. 219 (2007). In that case, the appellant, Christopher K., was involuntarily admitted to the New Hampshire Hospital under RSA chapter 135-C (2005) and subsequently conditionally discharged. *Id.* at 221. The involuntary admission order and conditional discharge were set to expire on May 6, 2005; however, on April 18, 2005, a petition was filed to renew the appellant's conditional discharge. *Id.* at 221. The probate court granted the petition following a hearing on May 24, 2005. *Id.* at 228. On appeal, the

appellant argued that the probate court lacked jurisdiction to renew his conditional discharge because, under RSA 135-C:39, II, the probate court was required to act on the petition within thirty days of its filing, and, thus, the previous order had expired prior to the hearing. *Id.* at 228. We disagreed, concluding, "To interpret RSA 135-C:39, II so that the extension of the period of involuntary admission terminates at the end of the thirty-day period . . . would thwart both purposes of RSA chapter 135-C: treatment of the [appellant] and protection of the public." *Id.* at 229-30. Thus, we held that the conditional discharge did not automatically terminate at the end of the thirty-day period, and the probate court had jurisdiction to hear the petition. *Id.* at 230.

While in *Christopher K.* we made our determination based upon statutory goals similar to those of RSA chapter 135-E, the circumstances of that case are distinguishable from those at issue here. First, the appellant in *Christopher K.* was conditionally discharged during the delay and would remain conditionally discharged following entry of the probate court's order. Thus, he did not possess the degree of liberty interest that a person detained pending a petition under RSA chapter 135-E holds. Second, the issue in *Christopher K.* was a renewal of an involuntary commitment order. Thus, unlike this case, there had already been a finding that the appellant met the standard for involuntary commitment under RSA chapter 135-C. The time limits at issue here involve the initial determination that the person is indeed a sexually violent predator requiring his involuntary commitment. Finally, read as a whole, RSA chapter 135-E is distinguishable from RSA chapter 135-C in at least one significant respect. As previously discussed, RSA 135-E:4, IV explicitly states that the time limits enumerated in the emergency provision are not jurisdictional, thus persuasively evidencing an intent that the remaining time limits are jurisdictional. *See St. Joseph Hosp. of Nashua,* 141 N.H. at 11-12. There is no comparable provision in RSA chapter 135-C, the statute at issue in *Christopher K.*

■ The State also argues that the primary purpose of RSA chapter 135-E, protecting the safety and welfare of the public, would be thwarted if the time limits were found to be jurisdictional. We disagree. We acknowledge that strict enforcement of mandatory time frames may arguably diminish the goals of a statute. *See McCarthy,* 152 N.H. at 647. However, we reiterate that, when mandatory time limits are rooted in the right to due process and the protection of a liberty interest, this result is consistent with the overall statutory scheme. *Id.* at 646; *see also Russell C.,* 120 N.H. at 268; *In re Eric C.,* 124 N.H. 222, 225 (1983).

■ While we hold that the time frames set forth in RSA 135-E:7, I, and RSA 135-E:9, II are jurisdictional, dismissal of the current petition may not

be required in this case. We have consistently held that a jurisdictional time limit that has not been complied with requires dismissal of the underlying petition "unless such noncompliance is the result of a delay caused or requested by the [prejudiced party], in which case he will be deemed to have waived the time limits." *McCarthy*, 152 N.H. at 646; *see also Russell C.*, 120 N.H. at 268. Therefore, to the extent the defendant has caused a delay, the period of that delay may not be counted against the statutory time period. *See, e.g., State v. Brown*, 157 N.H. 555, 563-64 (2008) (in Interstate Agreement on Detainers Act proceeding, delays in bringing defendant to trial caused by his requests are not counted toward the time limit); *State v. Allen*, 150 N.H. 290, 294 (2003) (in speedy trial analysis, "we initially discount any delays that were prompted by the defendant because he cannot take advantage of delay that he has occasioned").

██ Here, the record demonstrates that the defendant caused at least some delay in the initial determination of probable cause by filing a substantive motion in that regard. However, the extent of this delay, and whether there were any additional delays, is unclear. We therefore remand for further proceedings consistent with this opinion.

*Vacated and remanded.*

BRODERICK, C.J., and DALIANIS and HICKS, JJ., concurred.