Merrimack
No. 2009-917

## IN RE CIERRA L. & a.

Submitted: May 13, 2010
Opinion Issued: November 24, 2010

186

*Law Office of Nancy S. Tierney,* of Lebanon (*Nancy S. Tierney* on the brief), for the respondent, Cara L.

*Michael A. Delaney,* attorney general (*Matthew G. Mavrogeorge,* attorney, on the memorandum of law), for the New Hampshire Division for Children, Youth and Families.

*Nixon Peabody, LLP,* of Manchester (*Brian D. Duffy* on the memorandum of law), for the guardian ad litem, Court Appointed Special Advocates of New Hampshire, Inc.

HICKS, J. The respondent, Cara L., appeals an order of the Superior Court (*Brown,* J.) denying her motion to dismiss the abuse and neglect findings against her. We affirm.

The record supports the following facts. On November 10, 2008, the Franklin Family Division (*Gordon,* J.) entered a finding of abuse and neglect against the respondent with respect to her child and two stepchildren. It issued a final dispositional order after a hearing on November 21, 2008. The respondent requested an appeal *de novo* in superior court pursuant to RSA 169-C:28. *See* RSA 169-C:28, I (2002).

On April 8, 2009, the superior court scheduled a status conference for April 20. The respondent moved to reschedule the status conference and the superior court granted the motion, setting the new date for June 5, 2009. Thereafter, the respondent filed an assented-to motion to continue the June 5 status conference. The superior court granted the respondent's motion and rescheduled the status conference for June 29.

A *de novo* adjudicatory hearing was held from September 1 to September 3, 2009. On September 28, the superior court issued an order affirming the family division's finding of abuse and neglect and subsequently scheduled a dispositional hearing for November 17, 2009. On October 30, 2009, the respondent moved to dismiss both the superior court and the family division findings against her on the grounds that the superior court failed to schedule the matter as a priority under RSA 169-C:28, I, and that it failed to schedule the dispositional hearing within thirty days of its finding of abuse and neglect pursuant to RSA 169-C:18, VII (Supp. 2009).

The superior court denied the respondent's motion. With respect to RSA 169-C:28, I, the court found "that any delay in scheduling the hearing on the petition was principally due to the respondent's own motion practice." Regarding RSA 169-C:18, VII, the court ruled that "[b]ased on the facts of this case alone, the Court declines to accept that the minimal delay beyond the thirty days warrants the extraordinary remedy of dismissal." This appeal followed.

The respondent argues that the superior court erred in denying her motion to dismiss because it failed to give her *de novo* appeal priority on its calendar in accordance with RSA 169-C:28, I, and it failed to conduct a final dispositional hearing within thirty days of its findings of abuse and neglect pursuant to RSA 169-C:18, VII. We will address each argument in turn.

The respondent first argues that the superior court erred in denying her motion to dismiss because it did not give her *de novo* adjudicatory hearing priority on the court's calendar in accordance with RSA 169-C:28, I. The State contends that RSA 169-C:28, I, does not set a specific time limit within which the superior court must conduct a *de novo* adjudicatory hearing and, even if it did, the respondent waived any time limit by virtue of her motion practice.

RSA 169-C:28, I, states, in relevant part:

An appeal under this chapter may be taken to the superior court by the child or the child's authorized representative or any party having an interest, including the state, or any person subject to any administrative decision pursuant to this chapter, within 30 days of the final dispositional order; but an appeal shall not suspend the order or decision of the court unless the court so orders. The superior court shall hear the matter de novo, and *shall give an appeal under this chapter priority on the court calendar.*

(Emphasis added.)

■ We first must determine whether the prescription under RSA 169-C:28, I, that the superior court give priority to an appeal is mandatory or discretionary. *See In re Christopher K.*, 155 N.H. 219, 229 (2007). Because this presents a question of statutory interpretation, our review is *de novo. State v. Fournier*, 158 N.H. 441, 445 (2009). We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *In re Juvenile 2004-469*, 151 N.H. 706, 707 (2005). We start by examining the language of the statute itself, ascribing to the words used their plain and ordinary meaning. *In re Christopher K.*, 155 N.H. at 229. "The general rule of statutory construction is that the word 'shall' is a command which requires mandatory enforcement." *Id.* (quotation omitted). Therefore, by its express terms, RSA 169-C:28, I, requires the superior court to give appeals under RSA chapter 169-C priority on its calendar. *See id.* The statute, however, does not delineate a specific time limit, *cf. In re Raymond K.*, 120 N.H. 456, 457 (1980) (noting that a similar provision in the delinquent children statute "could be construed as impos- ing a time constraint on the superior court" but that "[n]o specific time period . . . is mentioned"), and the respondent does not cite any legal authority in support of her proposition that the legislature intended to impose a specific time limit on the superior court.

■ Even assuming, without deciding, that the language imposed a time limit on the superior court, the statute does not provide a remedy for its enforcement. "Where the legislature has not provided how its mandatory time limits are to be enforced, we must determine the appropriate mode of enforcement." *Fournier*, 158 N.H. at 446. "Our inquiry focuses upon two factors: consideration of the statutory goals and whether the party seeking relief has shown prejudice as a result of the statutory violation." *Id.*

■ "When interpreting the goals of a statute, we have distinguished between two types of time limits: those involving a liberty interest and those involving a general interest in hastening adjudicative dispositions." *Id.* at 446-47 (quotation omitted). "Where the legislature, out of liberty concerns, has mandated time limits for holding hearings, we have held that personal jurisdiction over a defendant is lost, absent waiver, if the case is not heard within the statutory period." *Id.* at 447 (quotation omitted). "Where the legislature has prescribed time limits out of a general interest in hastening adjudicative dispositions for the benefit of all parties involved, however, we have been unwilling to treat the time limit as jurisdictional." *Id.* (quotation omitted).

■ The purpose of RSA chapter 169-C is "through the mandatory reporting of suspected instances of child abuse or neglect, to provide

protection to children whose life, health or welfare is endangered and to establish a judicial framework to protect the rights of all parties involved in the adjudication of child abuse or neglect cases." RSA 169-C:2, I (2002). It bears emphasizing that RSA 169-C:28, I, delineates no particular time frame for conducting an adjudicatory hearing in a *de novo* appeal under the chapter. Additionally, our review of the legislative history of the statute reveals nothing to indicate that RSA 169-C:28, I, was enacted to protect the liberty interest of those involved in the adjudication of child abuse and neglect cases. *Cf. In re Russell C.*, 120 N.H. 260, 266 (1980) (finding that the mandatory time limits on juvenile adjudicatory hearings under RSA chapter 169-B and RSA chapter 169-D are a "legislative pronouncement of a child's right to the expeditious resolution of his alleged delinquency or 'need for services' rooted in his right to due process"). Rather, it appears that the priority mandate was intended to hasten the *de novo* appeal process in the superior court. *Cf. In re Robyn W.*, 124 N.H. 377, 381 (1983) (discussing that the purpose of the sixty-day time limit for issuing a decision in termination of parental rights cases is "to provide a speedy disposition for the sake of the child's welfare and the interest of the parent whose parental rights may be terminated").

▮ Finally, we note that the respondent has not raised any prejudice argument. Accordingly, we conclude that the superior court did not err in denying her motion to dismiss based on RSA 169-C:28.

▮ Turning to the respondent's second argument, she contends that the superior court failed to schedule the dispositional hearing within thirty days of the adjudicatory hearing, as mandated by RSA 169-C:18, VII, and this failure also deprived the court of jurisdiction. The State concedes that the time limit prescribed in RSA 169-C:18, VII is mandatory. However, it argues that the time limit does not apply to *de novo* appeal proceedings in superior court. The State further contends that, even if the time limit does apply to the superior court, dismissal is not warranted.

RSA 169-C:18, VII provides that "[t]he court shall hold a hearing on final disposition within 30 days after a finding of neglect or abuse." RSA 169-C:3, IX (Supp. 2009) defines "court" as "the district court, unless otherwise indicated." Neither party disputes that the term "district court" as used in the statute includes proceedings in the family division. *See* RSA 490-D:14 (2010); RSA 169-C:28, II (2002). The time limit in RSA 169-C:18, VII speaks only of "court" without giving any indication that the term includes the superior court. In contrast, RSA 169-C:28, I, expressly requires the "superior court" to "give an appeal under this chapter priority on the court calendar." We regard it as incongruous that the legislature would require the superior court to give *de novo* appeals priority on its calendar in one

section of the statute and then assign it a specific time period, jurisdictional in nature, to conduct a final dispositional hearing in another section of the statute. *See Appeal of Thermo-Fisher Scientific*, 160 N.H. 670, 672 (2010) ("We interpret a statute to lead to a reasonable result . . . .").

Moreover, viewing the entire statutory framework, we conclude that the legislature intended RSA 169-C:18, VII to apply solely to the district court. *See id.* (stating that we review a particular statutory provision "not in isolation, but together with all associated sections"). Abuse and neglect proceedings originate in the district court by the filing of a petition. *See* RSA 169-C:7 (2002). After an abuse and neglect proceeding is initiated, the district court must conduct a preliminary hearing "to determine if reasonable cause exists to believe that the child is abused or neglected." RSA 169-C:15, I (Supp. 2009). "Upon a finding of reasonable cause that the child is abused or neglected, the court shall . . . [s]et a date for an adjudicatory hearing to be held and completed within 30 calendar days of the filing of the petition." RSA 169-C:15, III(d) (Supp. 2009). Further, "[i]f the court finds sufficient facts to sustain the petition, at a preliminary disposition, the court may" issue certain orders relative to the protection and placement of the child. RSA 169-C:16 (Supp. 2009).

Following the adjudicatory hearing, "[t]he court shall hold a hearing on final disposition within 30 days after a finding of neglect or abuse." RSA 169-C:18, VII. The district court then may determine the appropriate final disposition, including placement and legal custody of the child. *See* RSA 169-C:19 I, III (Supp. 2009). The court also may issue an "order of protection setting forth conditions of behavior by a parent, relative, sibling, guardian, custodian or a household member," RSA 169-C:19, II, and "order any parent, guardian, relative, custodian, household member, or child to undergo individual or family therapy, or medical treatment." RSA 169-C:19, IV (Supp. 2009). Thereafter, an appeal may be taken to the superior court "within 30 days of the final dispositional order; but an appeal shall not suspend the order or decision of the court unless the court so orders." RSA 169-C:28, I; *In re Thomas M.*, 141 N.H. 55, 60 (1996) (finding that RSA 169-C:28, I, grants authority to the district court, not the superior court, to suspend a final dispositional order during a *de novo* appeal under RSA chapter 169-C).

■ ■ Given that the purpose of RSA chapter 169-C is "to provide protection to children whose life, health or welfare is endangered and to establish a judicial framework to protect the rights of all parties involved in the adjudication of child abuse or neglect cases," RSA 169-C:2, I (2002), and that it is the district court's final disposition that resolves such significant issues as the placement and legal custody of the child in the first instance,

RSA 169-C:19, it is understandable that the legislature intended for the district court to provide a speedy disposition of such cases once it renders a finding of abuse or neglect. *Cf. In re Melissa M.*, 127 N.H. 710, 712 (1986) (noting that RSA chapter 169-C emphasizes avoiding delay in child protection cases). A quick disposition bears great importance at the district court stage of the proceedings to ensure stability and resolution for all parties involved. To further that end, the legislature provided that the district court shall conduct a dispositional hearing within thirty days of an abuse and neglect finding. *See* RSA 169-C:18, VII. A speedy disposition is necessary at the district court level to provide that the parties are not left for a lengthy period of time without a resolution once a finding of abuse or neglect has been rendered. This need lessens at the superior court level because the district court has already provided the parties with a final dispositional order and that order shall not be suspended during the *de novo* appeal process unless the district court provides otherwise. *See* RSA 169-C:28, I; *In re Thomas M.*, 141 N.H. at 60. Based upon our review of the statutory framework, we conclude that the thirty-day statutory time limit applies only to the district court. *See* RSA 169-C:18, VII; *cf. In re Raymond K.*, 120 N.H. at 457 (concluding that the time limit sections in RSA 169-B:7, I, and RSA 169-B:14, II refer only to "courts" and, thus, impose statutory time limits only on district courts).

The respondent contends that our decision in *In re Juvenile 2002-511-A*, 149 N.H. 592 (2003), dictates that the term "court" in RSA 169-C:18, VII applies to the superior court. We disagree. In *In re Juvenile 2002-511-A*, we considered whether the term "court" in RSA 169-C:21 applies to the superior court in a *de novo* appeal conducted pursuant to RSA 169-C:28. *In re Juvenile 2002-511-A*, 149 N.H. at 593-94. "RSA 169-C:21 provides that if sufficient facts are presented at the adjudicatory hearing to sustain the neglect petition, 'the court shall enter a final order in writing finding that the child has been neglected' and that the order of 'the court shall include conditions the parents shall meet before the child is returned home.'" *Id.* at 594 (ellipsis and brackets omitted).

■ Having previously determined that the *de novo* review provided in RSA 169-C:28 required the superior court to hear both the adjudicatory and dispositional proceedings of an abuse and neglect case *de novo*, we declined to limit the scope of *de novo* hearings in superior court to less than that provided by the legislature at the district court level. *Id.* As such, we concluded that RSA 169-C:28 provides clear indication that the term "court" in RSA 169-C:21 applies to the superior court in a *de novo* appeal. *Id.* This interpretation comports with the mandate of providing *de novo* review in superior court commensurate with the scope of the adjudicatory

and dispositional hearings afforded at the district court. In contrast, RSA 169-C:18, VII governs the time frame for conducting a final dispositional hearing. As discussed earlier, it is reasonable to conclude the legislature did not intend for this time frame to apply to the superior court. In view of this holding, we need not consider the respondent's jurisdictional argument regarding RSA 169-C:18, VII.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.